TRUMAN W. DODSON ET AL., PLAINTIFFS IN ERROR, v. MARY A. TAYLOR ET AL., HEIRS, &c., DEFENDANTS IN ERROR.

1. In a declaration under the statute against heirs and devisees, it is not necessary to aver that the personal estate of the decedent is insufficient to pay his debts.

2. If the endorser of a promissory note die, leaving lands, before its maturity, his heirs or devisees may be sued, under the statute, upon the contract of endorsement.

On error to the Supreme Court.

For the plaintiffs in error, *G. D. W. Vroom, John Rellstab* and *W. M. Lanning.*

For the defendants in error, *E. H. Murphy* and *J. H. Backes.*

The opinion of the court was delivered by

DIXON, J.    To a declaration against the heirs and devisees of James Taylor, deceased, the defendants demurred, on two grounds—*first*, because the declaration contains no averment of the want of sufficient personal property to pay the claim; and, *second*, because it seeks to charge the defendants upon an endorsement by their ancestor of a promissory note which had not matured at the time of his death, the defendants insisting that such a contingent liability is not enforceable against heirs or devisees.

The Supreme Court having given judgment for the plaintiffs, the defendants sued out a writ of error from this court.

The statute upon which the action must rest is "An act for the relief of creditors against heirs and devisees," passed March 7th, 1797 (*Pat. L., p.* 243 ; *Rev., p.* 476), enacting as follows : "Section 1. That all and every creditor and creditors, whether by simple contract or specialty, and whether the heirs are mentioned therein or not, shall and may, by virtue of this

act, have and maintain his, her and their action and actions, against the heir and heirs at law of any debtor who hath already died, or shall hereafter die, intestate, seized of any messuages, lands, tenements or hereditaments, and against the heir and heirs at law, and devisee and devisees, of such debtor, in case such debtor made any last will or testament; * * * and, moreover, all such creditors shall be preferred as in actions against executors and administrators."

In support of their first ground of demurrer the defendants contend that there is a general design manifested in the laws of this state to have personal property applied to the payment of debts before real estate is resorted to for that purpose, and that, in furtherance of this design, the statute in question must be read as if it contained a clause restraining the creditors of a deceased debtor from suing his heirs and devisees until his personal assets have proved insufficient to satisfy their claims. In proof of this design, the demurrants refer to the doctrine derived by us from the common law and the ancient statutes of England, that the personal property of decedents is the primary fund for the payment of debts, a doctrine which has been observed, not only in the courts of this state, but also in its legislation, by the statutes requiring refunding bonds from legatees and distributees, and by those empowering the Orphans' Court to decree the sale of lands for the payment of debts, only when the personal estate is inadequate. They refer, also, to the rule, prevalent here from very early times, that writs of *fieri facias* shall direct the sheriff to make the debt or damages and costs out of the defendant's goods and chattels, if possible, before selling his lands.

But the existence of this general policy does not warrant the courts in placing so important a limitation upon a right which the legislature saw fit to grant by this statute in absolute terms.

By the common law of England, an action might be brought against heirs, upon any specialty of their ancestor expressly binding his heirs, and by statute 3 and 4 W. & M., ch. 14, passed more than a century before our act of 1797, an action of

debt might be brought against devisees upon such a specialty. Yet, notwithstanding the prevalence in England of the same views with regard to the primary application of personal assets, it was always considered not only that the plaintiff, in an action against heirs or devisees, was not obliged to aver that the decedent's goods and chattels were exhausted, but even that a plea by the defendants that there were personal assets sufficient to pay the plaintiff, was bad.    2 *Saund.* 7 *a, note;* 2 *Arch. Prac.* 1084.    The relief afforded to the heirs or devisees was, that they might stand in the place of the bond creditor, and reimburse themselves out of the personal estate. *Clifton* v. *Burt,* 1 *P. Wms.* 678.

With accurate knowledge, undoubtedly, of this course of decision, Justice Paterson drafted our statute of 1797, enlarging the right of action against heirs and devisees, but by no form of expression indicating a purpose to confine the remedy to cases in which the personalty had been exhausted.    It cannot be assumed that he left so important a restriction to inference.    The provincial act of December 2d, 1743 (*Allin. L., p.* 129), by force of which lands were held to be assets leviable under judgments against executors or administrators for the decedent's debts (*Den.* v. *Jones, Coxe* 131 ; *Den.* v. *Hunt,* 6 *Halst.* 1), and the statute of February 18th, 1799 (*Pat. L., p.* 369), framed by Justice Paterson himself, to make lands liable to be sold for the payment of debts, either under a judgment against the debtor or by decree of the Orphans' Court, in case the debtor had died, postponed in express terms the remedy against the lands until the goods and chattels had proved insufficient.    This fact corroborates the presumption that a similar provision would have been embodied in the act concerning heirs and devisees, if the intention had existed so to limit the right of suit.

Moreover, since the passage of this statute, many actions have been brought under it, but in none, so far as we are informed, has it been thought necessary to allege a want of personal assets.

For these reasons we conclude, in consonance with the decision of the Supreme Court in *Stone* v. *Todd*, 20 *Vroom* 274, that, in an action against heirs or devisees, the declaration need not contain an averment that there are not personal assets to pay the plaintiff's debt.

With regard to the second ground of demurrer, that, if the endorser of a promissory note die before its maturity, his heirs and devisees are not chargeable under our statute, the demurrants rely upon the case of *Farley* v. *Briant*, 3 *Ad. & E.* 839. There, one Briant had become surety for the lessee in a lease which was to terminate on the death of the lessor, and the King's Bench decided that the heirs and devisees of the surety could not be held, under the 3 and 4 W. & M., ch. 14, for rent accruing after the surety's death.

The facts of that case are plainly distinguishable in principle from those now before us, for the debt there in suit did not exist when the surety died, and it was then uncertain whether it would ever come into existence, as the death of the lessor might end the term before the rent accrued. But in the present controversy the debt did exist when the endorser died, and was sure to become due by the mere lapse of time. No contingency attached to the debt itself. The money represented by the promissory note would be called a debt, with as much precision of statement before the maturity of the note as afterwards.

But the difference between the facts of these cases is no more marked than the difference between the laws applicable to them. The divergence of our act from the 3 and 4 W. & M. is pointed out by the Chief Justice in *New Jersey Insurance Co.* v. *Meeker*, 8 *Vroom* 282, and leads reasonably to the conclusion there expressed, that the adjudications upon the English statute can have little weight in any attempt to expound the act of this state, on account of their verbal differences.

We are then to consider the scope of our statute as indicated by its own terms. It employs three words which denote the sort of obligations enforceable under it—creditors, for whose relief it was enacted; debtors, whose heirs and

devisees are to be charged, and debts, which are to be recovered, by virtue of its provisions. It discloses no other limitations pertinent to the present inquiry. If there be a debt, and the debtor die leaving lands, his heirs or devisees can be sued for the debt by the creditor. This is, beyond dispute, the purport of the statute, and the question now is, whether these facts appear in the present case.

As already stated, the sum of money mentioned in a promissory note is a debt, in the strictest sense of that term, as well before maturity as afterwards. With equal exactness, the holder of the note is called a creditor. The only point for disputation is, whether the endorser is a debtor before his liability becomes absolute by dishonor and notice. But, from the time of endorsement, he is bound for the payment of the debt, and a person so circumstanced is, in both common and legal parlance, a debtor. The contingency affecting his responsibility is one by which he may be released, not one by which he may become bound; it is of the nature of a condition subsequent, not a condition precedent. His obligation as a debtor continues until the payment of the debt, or the laches of the creditor discharges him.

The statute under review is remedial, and therefore its language must receive a liberal interpretation. So interpreted, the term "debtor," clearly, I think, embraces the endorser of a promissory note before maturity.

This conclusion is reached without giving to the act so broad a signification as was ascribed to it by the Supreme Court in *New Jersey Insurance Co.* v. *Meeker, ubi supra,* but at the same time we do not mean to intimate that the latitude of construction there adopted is unsound. The case in hand does not require its application.

The judgment for the plaintiff is affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, MAGIE, REED, BROWN, CLEMENT, SMITH, WHITAKER. 9.

*For reversal*—None.