JAMES B. MOTT

*v.*

THE NEWARK GERMAN HOSPITAL &c. et al.

1. In a foreclosure suit begun more than a year after the death of a decedent mortgagor, a proof of claim exhibited against the estate of the decedent cannot be set up as a lien on the mortgaged premises.

2. Where an executrix is also a devisee, and a judgment is recovered against her as executrix, *eo nomine*, upon a claim against the decedent's estate, the judgment is no lien either upon the estate of the decedent or upon the estate which came to the defendant not as executrix but as devisee of the lands of the testator.

3. An assignment of a bond and mortgage for a presently paid consideration, executed under seal, duly acknowledged and delivered for the purpose of pledging the bond and mortgage as security for the payment of a debt, is an effectual pledge, although manual delivery of the bond and mortgage may not have been made.

4. An estoppel will be worked not because the loss to the party injured was a succeeding event to the act or omission of the party to be estopped, in dealing with the subject-matter of the transaction, but because the act or omission of the party to be estopped was a moving cause which led the party injured to do the act or into the position resulting in the loss.

5. Under the statute (*Rev. p. 708 § 32*), the recording of an assignment of a mortgage is notice, from the time the assignment is left for record, to all persons concerned, that the mortgage is assigned. A subsequent assignee of the mortgage is a "person concerned," within the meaning of this statute, and must be held to have had constructive notice of the previous assignment from the date when it was deposited for record.

On bill, answers and proofs.

This is a foreclosure suit, making the Newark German Hospital the holder of the title, and several subsequent mort-

gagees and a judgment creditor parties defendant, and praying foreclosure of sale of the mortgaged premises in the usual way.

The matters in dispute arise out of the claim of the two parties, the complainant, Mott, and the defendant Somerville, to the ownership of a bond and mortgage upon a house and lot in Newark, and a claim of the priority of a judgment over the second and third mortgages.

John Hartman and Helena, his wife, made the mortgage in question to Phœbe I. King and others, executors &c., to secure the payment of $700. It was recorded December 31st, 1885. On October 23d, 1886, the mortgagees assigned the mortgage to Isaac W. King. This assignment was recorded November 22d, 1886. King applied to one Sayre, who was a friend of the complainant, Mott (with whom King was unacquainted), for a loan of $1,000 on two mortgages (one of them the Hartman mortgage) which he said were "gilt-edged securities." Sayre took him to Mott, who made the loan, actually paying to King $980, receiving King's note at four months, retaining $20 discount of the note, and also receiving in accordance with the contract of loan an assignment of the bond and mortgage in question.

Mott asked King for the mortgage, but he said the assignment was sufficient security, and, without refusing to deliver it, evaded doing so. This transaction took place April 29th, 1890. The note was not paid, but was often renewed, the last renewal coming due January 9th, 1892, after which time King paid no attention to it. Immediately after King took this position of indifference, Mott, and his friend Sayre for him, demanded from King the possession of the mortgage. These demands began when the renewed note was not paid, about January 9th, 1892, and seem to have been frequently repeated—Sayre swears "perhaps fifty times."

King never denied Mott's right to it, but postponed and avoided compliance by various excuses. After King's failure to pay the last renewed note, Mott, on February 5th, 1892, recorded his assignment of the mortgage.

Mott also went to see Mrs. Hartman, one of the mortgagees,

showed her his assignment, forbade her to pay principal or interest to anyone else, was by her referred to her business man, Mill, and also showed him the assignment and explained the situation to him. As King paid nothing on the loan, Mott recovered judgment against him, for $1,234.83, in Essex circuit court, and issued execution, which was returned *nulla bona*. It seems to be undisputed that King is insolvent and financially irresponsible.

In the spring of 1893, on March 25th, about three years after the assignment of the mortgage by King to Mott, and one year after Mott had recorded his assignment, King obtained the defendant Somerville to loan him $325 upon the security of an assignment of the Hartman mortgage; the one now in question, and another mortgage.

The loan was afterwards paid off, was renewed by Somerville, and finally, at King's request, in the fall of 1893, Somerville purchased the Hartman mortgage from King outright for $425. Previous to the taking of the assignment on March 25th, 1893, Somerville had his lawyer examine the record for assignments of the mortgage, and received an assurance from him to the effect that there was none on record. He had another search made before he made the absolute purchase of the mortgage, with like result. Before the time of this earlier search, the assignment from King to Mott was, in fact, on record, for the registrar's certificate endorsed on it shows it to have been recorded on the 5th day of February, 1892, and it was admitted at the hearing that, in making the searches, Somerville's representative did not see this record of Mott's assignment. At the time of the first negotiations between Somerville and King for the loan, Somerville was taken by King to Mill, the business man for Mrs. Hartman. Somerville swears he told Mill that he was about to take an assignment of the mortgage, and Mill said that would be all right; that he would pay the interest as it matured. Somerville does not testify that he told Mill he was about to take an assignment of the mortgage from King. Mott appears to have been a stranger to both Mill and Somerville, and as Mill was not told by Somerville from whom he expected to take an

assignment, Mill had no reason to believe that there might be two claimants to be owners of the mortgage, as his conversation with Mott was held probably a year before his talk with Somerville. The latter is not shown to have seen Mrs. Hartman, the mortgagor, at any time. Somerville, after the assignment to him, did collect the interest from Mill, who paid it as executor of John Hartman, the deceased mortgagor. The first time that Somerville heard that Mott had or claimed any interest in the mortgage was less than a year prior to April 1st, 1896, when the parties desired to pay off the mortgage, and Somerville went to get the money and was notified that the mortgage belonged to Mott. The latter appears to have heard of Somerville's claim on the same occasion. Under these circumstances the defendant Somerville claims that he is the owner of the Hartman mortgage.

A collateral question is raised by the answer of the defendant Gottfried Krueger. The latter sold merchandise to John Hartman in his lifetime, and, this debt remaining unpaid, Krueger proved it as a claim against his estate in the hands of his executrix, Helena Hartman. On March 4th, 1890, he recovered a judgment against the executrix, in Essex circuit court, on this claim.

The defendant Krueger claims that the lands of John Hartman are subject to the lien of this debt and judgment, and were devised to Helena Hartman (John Hartman's devisee of the mortgaged premises) with notice thereof, and that the lien of his debt precedes the lien of two mortgages made by Helena Hartman in her personal capacity (after title had vested in her as devisee of John Hartman), and now held by the defendant Marcus L. W. Kitchen and by Joseph M. Ward, administrator &c., respectively.

Mr. *David Kay, Jr.*, and Mr. *Henry H. Dawson*, for the complainant.

Mr. *Edwin A. Rayner*, for the executors of the defendant Marcus L. W. Kitchen.

*Mr. Philemon Woodruff,* for the defendant Alonzo Somerville.

*Mr. Michael T. Barrett,* for the defendant Gottfried Krueger.

GREY, V. C.

The defendant Gottfried Krueger has filed a proof of claim against the estate of John Hartman, deceased. Hartman was in his lifetime the owner of the mortgaged premises, which, on his death, passed by his devise to his surviving wife, Helena Hartman, and, on her death, passed by her devise to the defendant, the German Hospital. Mr. Krueger had also recovered a judgment on this claim against Helena Hartman, as executrix of John Hartman's will. It is this claim and this judgment which Mr. Krueger claims are liens against the mortgaged premises precedent to the two mortgages made by Mrs. Helena Hartman in her lifetime.

The act of December 2d, 1743 (*All. L. p. 129*), was, during the time that it was operative, construed to make the lands of a decedent liable to be sold under a judgment recovered against an executor or administrator without making the heir a party to the suit. *Den, ex dem. Ely,* v. *Jones, Coxe *131.* This enabled the executor, who was the only defendant, to let a fraudulent judgment be recovered which the heir's land might be taken to pay. But section 18 of the act of February 18th, 1799 (*Pat. L. p. 373*), relieved from this embarrassment, and in terms declared that no lands of the testator or intestate should be in anywise affected by a judgment against an executor or administrator. The same statute provided for the application of the lands of a decedent to the payment of his debts by making it the duty of the executor or administrator to exhibit to the orphans court the condition of the estate, and directing that court thereupon to make an order to show cause &c. why the land should not be sold to pay debts. This statute is the basis of our present act providing for the sale of decedent's lands for the payment of debts. That it was effectual to hinder a judgment against an executor from becoming a lien on the lands of the testator, is plainly shown by the adverse criticism of this provision by Mr.

Griffith, in 1822. See *4 Griff. L. R. p. 1288, note.* The force of this statute to prevent such a lien is fully recognized by the supreme court in *New Jersey Insurance Co.* v. *Meeker, 8 Vr. 302.* The judgment against the executor is therefore no lien on the lands which had been devised to the devisees.

Is the judgment sued out against the executrix, who is also a devisee, a lien on her estate as devisee?

The capacity in which the defendant party is sued fixes the estate which is bound by the judgment, and the coincidence that the defendant who is sued as executrix, also happens to be devisee, does not extend the lien to charge lands so received from the testator. The claimant against the testator had two modes, by either of which he could compel the lands of the testator to be taken for the satisfaction of his debt—first, by an order of the supreme court, obtained by the testatrix within one year from the death of the testator, under the statute (*Gen. Stat. p. 2370 § 70 et seq.*); or second, by an action brought against the heir or devisee as such, under the statute (*Gen. Stat. p. 1679*), to fix their liability regarding the lands which had descended or been devised to him. *Stone* v. *Todd, 20 Vr. 276; Dodson* v. *Taylor, 24 Vr. 200.* It is for the creditor to choose which of these remedies he will use. *Stone* v. *Todd, 20 Vr. 278.* If the suit is against the devisee, it must appear to have been begun, maintained, recovered and entered against the defendant in that capacity, in order to comply with the statutory requirements. The devisee may be compelled to pay in the first instance, though there may be personal estate, which, in due course of administration, should be primarily liable. In such case his remedy would seem to be to stand in the place of the creditor who forces him to pay, and reimburse himself out of the personal estate. *Dodson* v. *Taylor, supra.* To enable him to do this, there must have been a recovery against him as devisee, by which he must have been compelled to pay as devisee, because of the devise to him and not as executor out of the whole estate. The defences which the defendant Mrs. Hartman would make in the capacity of a devisee receiving lands from a testator, are wholly variant from those which she would make when sued as executrix. As to these defences,

the defendant has not been brought into court to answer, nor has any judgment been pronounced which precludes her from asserting her rights as devisee.

There is no ground to justify the argument that the judgment is a lien on the lands of the devisee.

The counsel for the defendant Gottfried Krueger also insisted that, by reason of the proof of his debt against the testator to his executrix, Helena Hartman, the lands of the decedent became subjected to the lien of his claim, and that the same Helena Hartman, who took the testator's lands as devisee, received her title with notice of this lien &c. If the claimant against a testator desires to make his money out of the real estate of the decedent, he must follow one of the modes prescribed by the statutes provided for that purpose. By the common law, the land of a deceased debtor was not liable for his debts. *New Jersey Insurance Co.* v. *Meeker, 8 Vr. 295.* The act of 1799, above referred to, charged the lands of the decedent with this liability, to be enforced in the mode indicated, through the action of the orphans court; but as it gave no protection to the creditor in case the heir or devisee had aliened the land before the executor took the action needed, the supplement of December 12th, 1825 (*Harr. Com. p. 130*), was passed, which declared that the lands of anyone dying seized should remain liable for his debts for one year after his decease, and might be sold &c. by order of the orphans court &c., any alienation or encumbrance made by the heir or devisee notwithstanding. See *Gen. Stat. p. 2370 § 70.* The testator, John Hartman, died July 22d, 1888. The defendant Krueger entered his judgment on March 4th, 1890. The mortgages made by the devisee, the priority of which is challenged by the judgment defendant, were both made within one year after the death of the testator, and had the judgment defendant been diligent in enforcing his remedies within the year, neither of these mortgages would have been deemed to be precedent liens to the title of a purchaser under an order for sale made by the orphans court. But the defendant Krueger suffered the year of limitation to expire without doing anything to compel the application of the lands to pay the testator's debts,

and thus lost the security of the statutory provision.   When the creditor of the testator desires the benefit of this statutory charge, he can only take it subject to the limitations and by pursuing the methods of procedure required by the statute.   If the executor does not act, the creditor has his remedy to compel action by obtaining judgment against the executor and forcing him to proceed to sell the lands as provided in section 79 of the Orphans Court act.   *Gen. Stat. p. 2373.*

Neither the judgment of the defendant Krueger nor his proven debt against the estate of the testator, John Hartman, is any lien on the mortgaged premises.

The main contention in the case is between the complainant, Mott, and the defendant Somerville, as to the ownership of the mortgage sought to be foreclosed.

That the previous holder, Isaac W. King, was the owner of the bond and mortgage in question, is admitted by all parties; that he assigned it to the complainant on the 29th of April, 1890, as collateral security for the payment of King's note then discounted by Mott, who, in accordance with the contract of the loan, then actually paid to King $980, is either admitted or conclusively proved.   It is also shown that King did not then deliver the bond and mortgage to Mott who asked for them, and that King evaded compliance, and to many repeated demands for actual delivery of the bond and mortgage made by Mott and his agent, Sayre, King replied that his wife objected, and a trustee who had charge of them refused to give them up &c.

In February, 1892, Mott recorded his assignment and about this time notified Mrs. Hartman, one of the mortgagors and the owner of the mortgaged premises, and also her business man, Mr. Mill, of his assignment, and forbade the payment of either interest or principal to anyone else.

It is the efficiency of this transfer of the mortgage from King to Mott, when asserted against the subsequent assignment of the same security by King to Somerville, which is in question in this branch of this case.

Somerville attacks Mott's title to the bond and mortgage upon several different grounds.   He denies that Mott's title was per-

fected because no manual delivery of the bond and mortgage
was made by King to Mott, though he admits a written assign-
ment was made of them by King to Mott, for which Mott at
the time paid King the full amount of the loan. If this criti-
cism has any force, it must exist because of the circumstances
attending the transaction between King and Mott, which took
place several years before Somerville had any dealings with
King. · This objection raises the question whether a full and
formal assignment in writing of the bond and mortgage executed
under the ·seal of the holder, for a valuable consideration then
paid and delivered to the assignee,. is effectual to pass to the
assignee title to the bond and mortgage, by way of pledge, .with-
out actual delivery of the latter. *Palmer* v. *Merrill, 6 Cush.*
*282*, is cited by the defendant Somerville to sustain his claim that
an assignment in writing of a bond and mortgage is not effectual
as a·pledge without ·actual manual delivery of the bond and
mortgage themselves.

· There are in the discussion of that ·case *dicta* touching the
general requirements of assignments of choses in action which
seem to support the defendant's contention. In that case a
debtor, whose life was insured, marked on the policy an assign-
ment and request to the insurers to pay part of the policy to the
plaintiff to whom he was indebted, but he did not deliver either
the assignment or the policy to the plaintiff. Shortly after the
insured died. The administrator of the insured collected .the
policy, and the plaintiff sued him for the portion claimed to be
assigned. There was no delivery by the insured debtor to his
creditor, the plaintiff, of any evidence whatever of the transfer.
Neither the assignment nor the policy ever left the possession of
the insured. Chief-Justice Shaw held that the plaintiff acquired
no such interest in the policy as would support an action, declar-
ing it to be impracticable to make a charge on a chose in action
by an assignment which the assignor retained in his own posses-
sion. In the present case there was an actual delivery of a per-
fected assignment, and a payment therefor then made, of a full
and valuable consideration, and with an undisputed intention at
that time by that act to pledge the bond and mortgage· assigned.

Other cases are cited to support the proposition that an actual delivery of the bond, mortgage or other evidence of the chose in action assigned, is a proper and effectual mode of pledging it. This is not disputed. But no case has been cited where it is held that an assignment expressed in terms applicable for the transfer of a bond and mortgage intended to be assigned, executed with all the formalities incident to such transfers, ackowledged so that it is capable of being recorded as the statute in such cases requires, paid for by a presently passing, valuable consideration, and the assignment delivered to the intended pledgee, is ineffectual to complete the pledge, solely because the bond and mortgage are not actually delivered. Delivery is an essential feature in the making of a pledge, in order that all persons who deal with the property pledged may be notified of the rights of the pledgee by his possession. But possession cannot always be shown by an actual physical holding of the pledge. Many articles may be pledged which are not susceptible of such visible holding, and the parties may pledge such property by acts indicating delivery which are apt and proper to the nature of the thing intended to be pledged, or in compliance with accepted usage, or with the requirements of law.

The rule has long been established and is now of universal acceptance, that the possession of the thing pledged may be according to the nature of the subject. *Wilson* v. *Little, 2 N. Y. 443.* If the subject of the pledge be of an incorporeal character, as a debt secured by a mortgage, possession may be given either by actual delivery of the indicia of the debt &c., or by written transfer to the hands or power of the pledgee so as to be made available to him for the satisfaction of the debt. Goods at sea may be pledged by an assignment of the bill of lading, and debts and choses in action may be pledged by a written assignment. *Wilson* v. *Little, 2 N. Y. 447; Story Bailm.* §§ *290, 297; Pars. Cont. 595.*

In the case in hand, the thing intended to be pledged was the debt which Hartman, the mortgagor, owed. The mortgage itself was not the pledge, but only accompanying security of the bond which was the evidence of the debt. The making and

delivery of the assignment of the mortgage was an appropriate method of indicating the full accomplishment of the pledge of the debt, even without the actual manual delivery of the mortgage. Such a method would have transferred the entire ownership, and has been recognized by statute as effectual for that purpose (*Gen. Stat. p. 2108 § 31*), and is apt and proper to express the result of the action of the parties. This section is obviously intended to make the written assignment of a mortgage and the record of the assignment conclusive evidence of a transfer of the holder's interest, and I can see no reason why this effect should be denied to a transfer which is absolute on its face, though it may be, in fact, as between the parties, a transfer of a qualified interest by way of pledge. The assignment of the mortgage under the circumstances narrated was, in my view, as between King and Mott, an effectual pledge of the mortgage to Mott.

The defendant Somerville also claims that the complainant is estopped to deny his title to the mortgage, under the operation of the rule that if one of two innocent parties must suffer by a fraud, that one must bear the loss who enabled the fraud doer to consummate the fraud. There is no pretence that Mott either colluded with King in aid of his subsequent fraudulent assignment to Somerville or knew of such purpose, or had any information which might have warned him of such design. He had been persistent in his efforts to get possession of the mortgage from King for a long while before Somerville took his assignment. The only basis for criticism of Mott's position is that he did not succeed in these efforts to obtain from King the actual possession of the mortgage, and Somerville insists that this fact alone enabled King to defraud him.

. This question has been considered in the courts of England, where there was no registry, when there was a first mortgage but no delivery of the title deeds, and the mortgagor having possession of the title deeds again mortgaged the estate and delivered the title deeds to the second mortgagee. In *Tourle* v. *Rand, 2 Bro. C. C. *650*, Lord Thurlow held that mere non-holding of the title deeds by the first mortgagee was not enough,

Mott v. Newark German Hospital.

that fraud or gross negligence on his part must be shown to postpone him. In *Evans* v. *Bicknell, 6 Ves. 183,* Lord Eldon denied that it was a rule in equity, that if a mortgagee lends money upon a mortgage without taking the title deeds, he enables the mortgagor to commit a fraud, and in *Barnett* v. *Weston, 12 Ves. *130,* before Sir William Grant, the point was made that the first mortgagee had permitted the mortgagor to keep the title deeds, which he produced to the second, as evidence that there were no encumbrances, and thus obtained a loan. In that case, it appeared there was an actual lending of the deeds by the first mortgagor, who exhibited them as proof that there were no encumbrances affecting the premises. Sir William observed that the first mortgage was not to be postponed unless a case of fraud could be made out, and the point was abandoned. That the mere circumstance of leaving the title deeds with the mortgagor is not of itself sufficient to postpone the first mortgage has been accepted in this country. Chancellor Kent held, in *Berry* v. *Mutual Insurance Co., 2 Johns. Ch. 609,* there must be fraud or gross negligence, which amount to it, on the part of the first mortgagee, to defeat the prior mortgage. These rulings were declared upon general equitable principles in cases where registry acts did not operate to give notice of the rights of the mortgagee, and where the holding of the title deeds was one of the indicia of the existence of the mortgage, and might be the sole evidence of it.

In New Jersey, the latest deliverance on the subject is that of the court of errors and appeals in *Lawson* v. *Nicholson, 7 Dick. Ch. Rep. 823* (reversing *Lawson* v. *Carson, 5 Dick. Ch. Rep. 370),* where the holder of a mortgage had deposited a bundle of papers, among which was a bond and mortgage, for safekeeping, with a scrivener who had not only negotiated the loan and drawn the bond and mortgage, but who had been authorized to collect, and had collected, the interest from the owners of the mortgaged premises. The scrivener took the bond and mortgage out of the bundle, accepted payment of the principal from a subsequent owner of the land, and absconded. It is to be observed that the scrivener had, by the act of the owner of the mortgage

given, not only the actual possession of the security, but also a colorable right to exercise some authority regarding the collection of a portion of the mortgage debt.  It was not shown in the case that the owner of the land, who paid the money, had any notice of the limited extent of the authority of the scrivener, nor was any bad faith successfully charged upon him.

The court of chancery considered that the placing of the bond and mortgage by the owner of them with the scrivener, with authority to collect the interest, rendered the fraud of the scrivener possible, and for this reason decided that the loss must fall on the holder of the mortgage.  But the court of errors and appeals held that the facts did not justify the decision, and it declared, in substance, that the rule of estoppel in such cases is, Did the party sought to be estopped act in such a way as to lead the other party reasonably to the conclusion of fact upon which he acted to his damage?  The fault of the party against whom an estoppel is sought to be worked must not only have existed, but it must have been the occasion of the injury to the party who sets it up.

In the case in hand, the fault of Mott, which is alleged to have caused the injury to Somerville, was his omission to secure possession of the mortgage from King, and it is claimed that Somerville was by reason of his reliance upon the possession of the mortgage by King led to advance his money.  But by his own testimony and the admissions of his counsel on the taking of the evidence, it appears that Somerville did not act upon the possession of the mortgage by King as evidence of his ownership.  On the contrary, Somerville himself testified that on March 25th, 1893, before he first took the mortgage as collateral security for a loan, he caused a search to be made to ascertain whether King had assigned the mortgage to some one else, and afterwards caused another search to be made before he absolutely purchased it.  The representative of Somerville, in making these searches, made a mistake and overlooked the assignment to Mott, though it was then properly recorded, and when he had reported the record " all right," Somerville, relying on this statement and not on King's possession of the mortgage (which he

Mott v. Newark German Hospital.

apparently did not accept as evidence of ownership), parted with his money.

The cause of Somerville's loss was therefore not Mott's omission but the blunder of Somerville's own lawyer, who failed to discover and report the record of the previous assignment when he made his search. The mere coincidence that Mott had not obtained possession of the mortgage from King and that King succeeded in cheating Somerville into accepting a second assignment, will not sustain an estoppel. The act or omission of Mott must have created an apparent condition of facts which Somerville accepted as true and relied upon, and because of this acceptance and reliance he must have parted with his money. From the circumstances shown, Somerville was not relying on the condition created by Mott's omission (if the latter was indeed responsibly at fault at all), but upon his own lawyer's mistaken search of the records. An estoppel is worked not because the loss to the party injured was a succeeding event to the act or omission of the party to be estopped, in dealing with the subject-matter of the transaction, but because the act or omission of the party to be estopped was the moving cause which led the party injured to do the act resulting in the loss. There must have been a relation of cause and effect, by which the injury and consequent loss to the injured party were the result of the previous misconduct of the party to be estopped. The party setting up an estoppel must show that he relied on, and was misled by, the conduct imputed to the party to be estopped. *Magie* v. *Reynolds, 6 Dick. Ch. Rep. 118.*

It was claimed that at the time he approached Somerville, King was the apparent owner of the bond and mortgage, but I have been unable to discover in the testimony taken that this fact came to Somerville's notice, or that he acted on any such apparent ownership in King. King was not one of the mortgagees. No assignment to him was proven to have been exhibited to Somerville. The latter testifies that King came to him with " two bonds and mortgages," but he nowhere states that he ever saw any assignment of them to King whereby he appeared to be the owner. No such assignment to King appears

to have been noted as marked as an exhibit in this cause. The only evidence in the case that King was the owner of the Hartman mortgage is contained in the admissions of the record of the assignment to him from the mortgagees, set out in the bill and answer. But if this record is appealed to as a notice that King held the title to this mortgage as a justification for Somerville's purchase of it, that same record, at the very time of Somerville's purchase, gave him notice that King was not the owner of the mortgage, because he had already, a year before, assigned it to Mott and the latter assignment was then recorded.

Whatever of fault was imputable to the complainant because of his omission to secure possession of the mortgage, was, however, certainly cured by his recording of his assignment. The estoppel is claimed because it is alleged Mott permitted King to appear to be the owner of the mortgage, whereby Somerville was misled. The recording by Mott of his assignment, long before Somerville acted, is hereinafter shown to have been full notice to Somerville that Mott was the holder of the mortgage.

The defendant Somerville also insists that he took the mortgage from King for value paid ; that he had no notice of Mott's assignment, which he claims is a mere latent equity in no way binding upon him. There is no dispute that Somerville did act in good faith in the purchase of this mortgage from King ; that he had no actual notice of Mott's previous assignment, and that he paid value for the mortgage when he took it. To maintain his claim that he had no notice of the assignment to Mott, he declares that the statute (*Rev. p. 708 § 32; Gen. Stat. p. 2108 § 32*), which provides for the recording of assignments of mortgages, prescribes only that the record " shall be notice to all persons concerned," and he insists that " persons concerned " means only those concerned at the time of the placing of an assignment on record, and, applying this construction to this case, he concludes that as Somerville had no interest in the mortgage at the time Mott recorded his assignment, the record of it was no notice to Somerville when he accepted his assignment a year afterwards.

That bonds and mortgages and their transfers are not governed by the same rules as commercial paper has been declared

Mott *v.* Newark German Hospital.

by our courts.     *Conover* v. *Van Mater, 3 C. E. Gr. 484.*     It is
also established that an assignee of a mortgage acquires no rights
superior to those of his assignor, and holds the mortgage subject
to defences that exist against it in the hands of the mortgagee.
*Atwater* v. *Underhill, 7 C. E. Gr. 605, 606,* and cases cited.     But
this rule has been declared to be limited to the saving of those
defences which the mortgagor or those who have succeeded to his
rights may have against the mortgagee, and not to extend to the
protection of undisclosed equities created in favor of strangers
by the mortgagee or holder.     *Redfern* v. *Ferrier, 1 Dow. 50;
Murray* v. *Lylburn, 2 Johns. Ch. 443; Losey* v. *Simpson, 3
Stock. 255; Woodruff* v. *Morristown Institution &c., 7 Stew. Eq.
178.*     The reason given is that the mortgagor or owner of the
mortgaged premises is known, and of equities between the mort-
gagor or owner of the property, and the mortgagee or holder of
the mortgage, such as partial payment of the mortgage &c., an
intending assignee of the mortgage may obtain knowledge by
applying to the mortgagor or owner of the mortgaged premises.
This is common usage; and acknowledgments that the principal
and interest are unpaid and that there are no defences, are fre-
quently taken from the mortgagor or owner, under the name of
" declarations of no set-off," preliminary to accepting the assign-
ment of a mortgage, in order to bind the mortgagor or owner
against such possible defences.     But no amount of diligent in-
quiry would enable an intending assignee of the mortgage to
ascertain what agreements touching the mortgage debt or secur-
ity the holder of the mortgage may have made with other per-
sons than those in privity with him; and if equities so arising
might be asserted against an assignee who had no notice of them,
" no assignment," says Lord Eldon, in *Redfern* v. *Ferrier, ubi
supra,* " could ever be taken with safety."     It is, therefore, held
to be necessary that actual or constructive notice must be shown
to have been given to such an assignee to make his holding of
the mortgage subject to such latent equity.     In the present case
Somerville claims that the previous assignment to Mott, while
it may have been effectual as between King and Mott, was, as
to him, an equity of this class; that he had no actual notice of

it, and that the statute above quoted is not applicable to give him constructive notice, and that his rights in the mortgage, under his subsequent assignment, are unaffected by it.

The recording of assignments of mortgages was provided for in this state by the act of 1853. *P. L. of 1853 p. 241.* This act authorized the recording of assignments of mortgages, and declared that " such recording shall be notice from the time such assignment is left for that purpose to all persons concerned that said mortgage is so assigned." In 1863 (*P. L. of 1863 p. 267*), an additional act was passed, declaring that mortgages and all writings containing any agreement for the payment of money should be assignable; that the assignee might sue thereon in his own name; that set-offs against the assignee should be allowed, and that " leaving the assignment in proper office to be recorded shall be notice of the assignment of the mortgage." These statutes were consolidated in the *Revision of 1877 p. 708* §§ *32, 33, 34.* In the Revision, the provision as to notice by the record of the assignment is that

"such recording shall be notice from the time such assignment is left for that purpose to all persons concerned, that the said mortgage is so assigned; and the assignment of any mortgage by an assignment or assignments not recorded shall be bound by the proceedings and sale in any foreclosure suit against any previous holder."

The language of this act expressly provides that the record of the assignment shall be notice " to all persons concerned." The statute prescribes the effect which the record shall have in the future; it is thereafter a warning without limit of time. The warning is to all persons concerned, and the words of the act do not limit the class to persons concerned at the time of the recording, else the act would have been expressed as notice to all persons *then* concerned. Under the law existing when these statutes were passed, providing for the recording of assignments of mortgages, there was no method whereby the assignee could give notice of his newly-acquired rights to those who were or might be interested in the property, save by successive actual notices to each person who had or might receive an interest. On

Mott v. Newark German Hospital.

the other hand, possible purchasers of the property, or of the mortgages against it, holders of previous mortgages who desired to foreclose, holders of subsequent mortgages who wished to redeem, owners who wished to pay interest, in short, all who either were or might be concerned in the liens against the mortgaged premises, were embarrassed for want of some means whereby they might certainly know who were the holders of the mortgages against it. The statute making the record of an assignment notice to all concerned, accomplished this end in the simplest and most easily-understood method. It provided a public place where all might go to obtain this information. It was intended to relieve against the difficulty of giving actual notice of the change of ownership of the mortgages, not to any special class of persons, but to all who might be interested in the mortgaged premises at the date of the record or at any time afterwards. That this was the proper understanding of the purpose of the statute is shown by its universal acceptance in common usage. All orders for searches include a direction to look for the record of assignments of mortgages; all foreclosures are based upon such searches; intending purchasers of the mortgaged premises, or of the mortgages, depend upon them. The defendant Somerville himself, in this very matter, when about to take an assignment from King, twice obtained such searches to be made. As Mott's assignment had at that time been recorded for over a year, a proper search would have brought actual notice to Somerville that Mott was assignee of the mortgage.

The construction of the statute, by the weight of the cases which discuss the question, is in accordance with the popular acceptance of the meaning of the act. I am referred to *Kamena* v. *Huelbig, 8 C. E. Gr. 80,* as sustaining the defendants' view that the notice by the statutory record, all persons concerned, of the assignment of a mortgage did not include a second assignee of a mortgage. That case held that no notice was required to the second assignee, and that he took the bond and mortgage subject to all equities. The learned chancellor, in his opinion, did say that assignments of mortgages " are not required to be recorded except as to the mortgagor, to protect him in pay-

ments," but that case turned upon its own peculiar equities and did not discuss the effect of a record as notice when actually made. The assignee undoubtedly has his opinion whether to record or not. He may be satisfied that notice of his assignment is not needed, or that all who may be concerned are notified, and he may, if he likes, omit to record and take this risk. But the question now under consideration is, Who are notified by the record, if made? In *Rose* v. *Kimball, 1 C. E. Gr. 185,* there was a dispute between two parties who each claimed to be assignee of a mortgage. The complainant's assignment was first made and recorded, the defendant's was taken after this record. Chancellor Green held that, admitting that the defendant paid value for it, " he took it with constructive notice of the assignment to the complainant." *Stein* v. *Sullivan, 4 Stew. Eq. 411,* was a contest between two successive assignees of the same mortgage. Chancellor Runyon held that the recording of the assignment to the complainant's assignor, prior to the making of the assignment to the defendant, was constructive notice to the latter, under the operation of *Rev. p. 708 § 32,* the recording statute now under consideration. Notice "to all persons concerned" was held notice to a second assignee of the mortgage. In this case it was also declared that the possession of the mortgage was not sufficient to give to one who buys it from the person in possession of it (who was the apparent owner) a valid title as against the real owner whose title to it is a record. The law imposed on the intending purchaser the duty of examining the records to ascertain who owned the mortgage, and the real owner was protected in his ownership by the record of his assignment. This case is, on this point, precisely applicable to the case now before this court.

It must be held that the defendant Somerville was notified of the previous assignment to the complainant, Mott, on the 5th day of February, 1892, when the latter's assignment was recorded.

The mortgagor and Mrs. Hartman, the devisee of the mortgagor, and the German Hospital, the devisee of Mrs. Hartman, likewise had constructive notice from the date of that record as

their several interests successively came to them. The payments of either principal or interest, made before that date to King, were well made and are saved by the statute (*Rev. p. 708 § 34; Gen. Stat. p. 2109*), as Mott's notice to Mrs. Hartman of his holding of the mortgage was about coincident in point of time with his recording of his assignment. Mott's holding is as collateral security for the payment of King's debt to him. The mortgage stands for such of its principal sum as remained due on February 5th, 1892, with interest from that date, to secure the debt of King to Mott. If there be any surplus of value in the mortgage, over Mott's debt which it was assigned to secure, the surplus belongs to Somerville by virtue of his subsequent assignment of the mortgage from King.

I will advise a decree in accordance with the views above expressed.