I filed a memorandum in the first above-entitled matter dated March 25th, 1940, relative to the first question submitted to the court for instructions which question was contained in paragraph 8-A-1 of the petition. In the said memorandum I concluded that evidence should be submitted relative to the issuing of the certificates in question in order to determine whether the certificates were primary obligations of The New Jersey Title Guarantee and Trust Company or secondary obligations of that bank.
That same question also came before me in the second above-entitled matter which was heard by Vice-Chancellor Fielder and re-referred to me. The proofs and briefs in said second above-stated cause came before me on a stipulation of counsel without a rehearing. I am, therefore, dealing in this opinion solely with the question of the nature of the obligations above referred to. The proofs in the two matters were practically the same.
It appears from the evidence that the certificates in question were issued pursuant to a resolution adopted by the executive committee of the bank on April 30th, 1924. This *Page 104 
resolution, after providing for the form and tenor of the certificates, established a fund or special deposit called a "mortgage pool." The bank increased the number of individual bonds and mortgages in the pool from time to time and made substitutions of certain mortgages by withdrawing some and depositing others. Certificates were sold to customers and to each certificate was affixed an approximate amount of United States revenue stamps as provided by the federal law. After the certificates matured, the holders were paid the amount due thereon from the general assets of the bank and not exclusively from the proceeds of the bonds and mortgages which formed the "mortgage pool." As the principal amount of the certificates outstanding was reduced by such payments, mortgages varying in amounts were withdrawn from the "mortgage pool" and placed or set up as general assets of the bank. The statements of the condition of the bank required to be published in the local newspapers contained statements relative to the aggregate amount due on the certificates outstanding and the amount due on the bonds and mortgages in the "mortgage pool." The former appeared in the statements as a liability and the latter appeared in said statements as an asset. The statements showed the bank liable for the payment of these certificates as direct obligations. Guaranteed mortgages sold by the bank individually and assigned in whole to a purchaser were distinguished in these statements from the participation certificates in question. The guaranteed mortgages referred to and assigned as such were set up as contingent liabilities.
Chief Judge Lehman of the New York Court of Appeals had before him a similar question. In dealing with that case Judge Lehman said:
"Though the certificate states that the company `assigns to the registered holder hereof an undivided, co-ordinate share of the same amount in the principal sum secured by the bonds and mortgages deposited or which may hereafter be deposited by the company with the Marine Trust Company of Buffalo, * * * as depositary under the terms of an agreement bearing date of June 10th, 1927, subject to which this certificate is issued, together with interest thereon at *Page 105 
the rate of five and one-half per cent. per annum,' an analysis of all the terms of the certificate and of the contract, to which it is subject, discloses that the guaranty company has entered into an unconditional promise to pay, ten years from the date of the certificates, the principal sum secured and accrued interest, and has transferred to the holder only an interest in the deposited mortgages as collateral security for its debt. Certainly the holder acquires, prior to default, no rights in the mortgages other or greater than the rights of a holder of collateral security, and the guaranty company retains at least the rights of an owner who has cumbered his title with a lien. True, the certificate provides that the guaranty company shall exercise these rights as `agent' for the holder of the certificate, but we construe the contract in accordance with its substance and effect, not with its form. So construed, the guaranty company is a primary debtor, assigning the mortgages only as collateral security for the debt." Re People, Title andMortgage Guarantee Company of Buffalo, 264 N.Y. 69;190 N.E. Rep. 153; 96 A.L.R. 297.
See, also, Kelly v. Middlesex, c., Trust Co., 116 N.J. Eq. 228,237; Howell v. Bartlett, 124 N.J. Eq. 544, 550; affirmed,126 N.J. Eq. 315; In re Shaw, 122 N.J. Eq. 536, 540.
I discussed the provisions and conditions of the said certificates in my memorandum of March 25th, 1940, and I will not repeat them here.
From a careful examination of the form of the certificates in this matter and the proofs before me, I have reached the conclusion that the certificates in question constitute a direct and primary obligation of the bank. The bank unconditionally promised to pay the face amount of the certificates to the holders thereof transferring to the holders an interest in the underlying bonds and mortgages (known as the "mortgage pool") as collateral security for its debt.
In the second above-mentioned cause complainants' solicitors have raised the question as to whether in this case the equity or bankruptcy rule should be applied. In the memorandum which I filed dated March 25th, 1940, in the first *Page 106 
above-mentioned matter, I reached the conclusion that the bankruptcy rule applied in this matter provided the certificates proved to be primary obligations of the bank. This question has again been argued by solicitors of the complainants in their briefs in the second above-mentioned matter. After considering this question a second time, I am still of the opinion that the bankruptcy rule applies since the certificates are primary obligations of the bank. I have reached this result for the reasons set forth in the decision relative to paragraph 8-A-2 of the petition for instructions in the first above matter.