F. A. Dixon et al. v. J. S. Sanderson.

No. 2606.

1. **Prize at Lottery Community Property.**—A prize drawn upon a lottery ticket bought by the wife with her separate funds is not acquired by gift, devise, or descent and is not the separate property of the wife.

2. **Gift by Husband to Wife—Lottery.**—If by agreement on part of the husband the prize was to be his wife's and when drawn it was placed in bank to her order as separate property, such facts as between the husband and wife constituted the money received as a prize the wife's separate property.

3. **Same.**—As against creditors it would devolve upon the wife to show that at the time of the transaction the husband had ample means readily and easily accessible to his creditors and to the ordinary process used in the collection of debts. In absence of such proof the conveyance to the wife would be held fraudulent as against creditors.

4. **Practice.**—When such transaction between husband and wife is attacked and their testimony is taken by depositions by reason of their residence in another county, and an effort is made on their part to postpone the trial so as to allow of their personal presence and is overruled, more effect should be given to general statements testified

to by them than if made upon the stand. A new trial is granted where their testimony was disregarded and to enable a full development of the case.

APPEAL from Ellis. Tried below before Hon. Anson Rainey.

The opinion states the case.

*Coombes & Gano* and *M. B. Templeton*, for appellants. — 1. It matters not how many mutations the separate money of the wife may have undergone, how often it has been invested in personal or real property, how often it has been loaned, collected, and reinvested, as long as the substance thereof can be traced and identified as the result of the money it is her separate property. Marx v. Lange, 61 Texas, 547; Montgomery v. Brown, White & Will. Texas Ct. App. (C. C.), sec. 1305.

2. The principle which lies at the foundation of the system of community property is the presumption that whatever is acquired by husband or wife, except by gift, devise, or descent, or by the exchange of one kind of property for another, is acquired by their mutual industry or by the individual effort. De Blane v. Lynch, 23 Texas, 25; Forbes v. Dunham, 24 Texas, 611.

3. Under the laws of this State the existence of the wife as a person distinct from her husband in matters of property is recognized, and the husband may make a binding contract with the wife in favor of her separate estate. Cartwright v. Hollis, 5 Texas, 152; Hall v. Hall, 52 Texas, 299.

4. Where land is purchased with funds of the community and the deed taken in the name of the wife the presumption is that it is community property, but this presumption may be rebutted by proof that it was the husband's intention in taking the deed in the wife's name that it should be her separate property. In such cases the transaction operates as a gift from the husband to the wife. Higgins v. Johnson, 20 Texas, 393; Higgins v. Higgins, 46 Cal., 260; Read v. Rahm, 65 Cal., 343; Estate of Holbert, 57 Cal., 257.

5. There is no presumption that a conveyance of land made by the husband to the wife is fraudulent as against the creditors of the husband; and unless the answer alleges such fraud it can not be proved. Hussey v. Castle, 41 Cal., 239; Reed v. Rahm, 65 Cal., 343.

6. The purchase of land for the wife with the separate funds of the wife creates a resulting trust in her favor where the deed does not upon its face show it to be her separate property, and such resulting trust is not within the registration laws. McKamey v. Thorp, 61 Texas, 650; Parker v. Coop, 60 Texas, 118; Blankenship v. Douglass, 26 Texas, 227.

STAYTON, CHIEF JUSTICE.—This is a suit brought by Mrs. Dixon to enjoin the sale of a house and lots under an execution issued against

her husband. She claims and the evidence is sufficient to show that some time during her coverture, with one dollar which she had before her marriage, she bought a ticket in the Louisiana State Lottery on which a prize of $15,000 was drawn, and that with a part of this the lots in controversy were bought and the improvements thereon made.

It is further shown that the husband agreed at the time the lottery ticket was bought that whatever prize might be received on it should be the separate property of the wife; and that the money so drawn and property bought with it as between the husband and wife have been treated as her separate estate.

The lots were bought on June 13, 1883, and it is not made to appear how long before that time the prize was received. It was proved that there were six judgments rendered against the husband in 1879 aggregating about $2500, and that these were settled by compromise in October, 1883.

The husband became indebted to appellee in 1877 in the sum of $200, for which note was given due one year after date. This note after the expiration of nearly five years was unpaid, when the husband renewed it by another note which was never paid, but on which appellee secured judgment on April 22, 1885. Under this judgment an execution issued and was levied on the property in controversy. The purpose of this suit is to restrain a sale under this levy.

Four witnesses who lived in the town of Ennis where the property seems to be situated and where Dixon seems formerly to have lived, testified that they had known him since 1875, and that he was then in mercantile business with another person and failed in the year 1879, since when he has been generally considered insolvent and without any property subject to execution.

These witnesses, however, stated that they did not know of their own knowledge that Dixon had not property in Dallas County at all times subject to execution.

Dixon and wife both testified that at the time the property in controversy was bought he had ample means to pay all his debts, but neither of them state in what the means consisted, and it appears that the money received as a prize was placed on deposit in a bank in New Orleans in the name of Mrs. Dixon.

On the case thus made the court below dissolved the injunction and rendered a judgment for the defendant.

If the money with which the lots were bought was the separate property of Mrs. Dixon otherwise than through gift from her husband there can be no question of her right to an injunction, for the deed upon its face does not show it to be other than community property, and a sale under execution would cloud her title.

It is insisted that the money received as a prize became the separate

property of Mrs. Dixon by reason of the fact that the lottery ticket on which it was drawn was bought with money owned by her in her separate right. The statute declares that "all property acquired by either husband or wife during marriage, except that which is acquired *by gift, devise, or descent,* shall be deemed the common property of the husband and wife." Rev. Stats., sec. 2852.

That the prize came not by gift, devise, or descent is too clear. It came as the fortuitous result of a contract based on valuable consideration paid, and is but the profit on a return which, like other profit not resulting from the increased value of a thing bought with the separate means of one party to the marital union, becomes the common property of the husband and wife.

Property purchased with money the separate property of husband or wife, or taken in exchange for the separate property of either, becomes the separate property of the person whose money purchases or whose property is given in exchange, in the absence of some agreement express or implied to the contrary, and if the thing purchased or taken in exchange increases in value this necessarily inures to the benefit of its owner.

Such a state of fact, however, is not before us, and we are constrained to hold that all profit realized on purchase of the lottery ticket became community property.

As between the husband and wife the facts are sufficient to show that the money received through the lottery ticket became the property of the latter through the gift of the husband, and the inquiry arises whether he was in condition lawfully to divert so much of the common property and thus place it beyond the reach of his creditors.

If the husband had ample means remaining within the reach of his creditors at the time he made the gift to satisfy all their claims, then the gift to his wife was not fraudulent and ought to be sustained.

There is evidence tending to show that he was considered insolvent, but there was no witness who was able to say that he may not have had at all times in an adjoining county property subject to execution sufficient to pay his debts.

So far as shown he seems to have paid all his debts except that due appellee, which on April 22, 1885, amounted to less than $325.

The uncontradicted evidence of both husband and wife is that when she bought the property in controversy he had ample means to pay all his debts.

The voluntary conveyance of property by one indebted is evidence of fraudulent intent, and the burden of showing that this did not exist rests upon the donor. This may be shown by proof of the fact that the debtor, at the time of the conveyance, had ample means remaining to discharge all his pecuniary liabilities then existing.

If a donor at the time of making a gift be insolvent his conveyance is void, for its necessary effect is to hinder, delay, or defraud creditors, but the mere fact of indebtedness alone is not sufficient to render a voluntary conveyance void. If, however, looking to the magnitude of the gift, the amount of indebtedness existing, and the value and character of the property left to the donor after making the gift, it does not appear that the assets remaining in the hands of the donor were ample to satisfy all his debts, then the voluntary conveyance ought to be held fraudulent. It should appear also that the property remaining in the hands of the donor, even if sufficient to discharge all his debts, was such as was readily and conveniently accessible to his creditors and the ordinary process used in the collection of debts, or a voluntary conveyance ought to be held fraudulent.

In the case before us the evidence of Dixon and wife was taken by deposition, and there seems to have been no effort made to ascertain by cross-examination what property besides that given by the husband to the wife remained in his hands after the gift.

Under this state of fact more weight ought to be given to the general statement that the husband had ample means to pay his debts than would be given to such statements when inquiry had been made as to what property he possessed, and there was a failure to show this.

It appears from a bill of exceptions that there was some misunderstanding as to the time when the cause would be called for trial, and that when called an application was made for a postponement of the trial in order that the plaintiff and her husband might be present and testify more fully than had they in the depositions which were taken before the amended petition on which the cause was tried was filed.

This evidences the fact that there was no indisposition to state every fact on which the right of the parties might depend, and tends to show a desire to develop the facts more fully than had been done in the depositions.

This opportunity having been refused on the objection of appellee, we are of opinion that he ought not to complain if full effect be given to the uncontroverted statements made by plaintiff and her husband, which so considered were such as to entitle plaintiff to a judgment.

The judgment of the court below will be reversed, but as there is reason to believe that the case has not been developed as it may be, the cause will be remanded.

It is so ordered.

*Reversed and remanded.*

Opinion December 21, 1888.