OCHOA et al. v. EDWARDS, Sheriff, et al. (No. 639.)

(Court of Civil Appeals of Texas. El Paso. Nov. 23, 1916. On Rehearing, Dec. 13, 1916.)

1. HUSBAND AND WIFE �köw255—COMMUNITY PROPERTY—PURCHASE OF REALTY.

Where property is purchased in part with the separate estate of a wife and partly with community funds, the wife has a separate interest in it proportionate to the amount her separate estate contributed towards its purchase, and the community interest is proportionate to the amount the community estate contributed, in the absence of anything upon the face of the deed to the wife to show that it is conveyed to her as her separate estate, and in the absence of agreement between the parties that the property shall be her separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 900–902; Dec. Dig. ⊙255.]

2. HUSBAND AND WIFE ⊙268(1)—COMMUNITY PROPERTY—HUSBAND'S DEBTS.

The community estate of husband and wife is subject to the payment of the husband's debts.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 953, 957–960, 964, 967; Dec. Dig. ⊙268(1).]

3. HUSBAND AND WIFE ⊙271—COMMUNITY PROPERTY—AGREEMENT BETWEEN HUSBAND AND WIFE.

Where husband and wife received lots, cash, and notes for a conveyance of property owned half by the wife as her separate estate and half by the community, the status of the lots, cash, and notes as half community property and half the wife's separate estate might have been changed by an agreement between husband and wife that the wife should take the lots as her separate property, in satisfaction of her separate interest in all of the consideration, and that the husband would take the notes and cash, in satisfaction of the community interest, which agreement must have been made at the exchange or prior thereto.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. ⊙271.]

4. HUSBAND AND WIFE ⊙271—COMMUNITY PROPERTY — SALE OF REALTY — POWER OF HUSBAND TO PARTITION RECEIPTS.

The husband, without the wife's consent, could not partition the receipts by alloting to her the lots, in satisfaction of her half interest in the total consideration, and allot to the community the notes and cash, since neither husband nor wife can partition property in which the community estate owns an undivided half interest, and the wife, as her separate estate, owns an undivided half interest, without the consent and agreement of the other.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. ⊙271.]

5. HUSBAND AND WIFE ⊙265—COMMUNITY PROPERTY—EXERCISE OF CONTROL BY HUSBAND.

The mere fact that a husband received and exercised control over the cash and notes owned

half by the wife and half by the community did not deprive the wife of her half interest in the notes and cash.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 917–924; Dec. Dig. ⊙265.]

6. HUSBAND AND WIFE ⊙137(1) — WIFE'S AND COMMUNITY ESTATE—HUSBAND'S RIGHT OF CONTROL.

A husband is entitled to receive and control, not only the community estate, but his wife's separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 512; Dec. Dig. ⊙137(1).]

7. HUSBAND AND WIFE ⊙269—COMMUNITY INTEREST — RIGHTS OF HUSBAND'S CREDITORS.

A husband's creditors cannot be deprived of their right to subject community property to payment of their claims by the mere fact that the wife claims it as her separate estate, and the husband claims no interest therein, after the transaction whereby it was received for a conveyance by the husband and wife of property owned half by the wife separately and half by the community.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 953–967; Dec. Dig. ⊙269.]

8. FRAUDULENT CONVEYANCES ⊙54(2)—INDORSER—STATUTE—"DEBTOR."

An indorser of promissory notes is a "debtor," in the original and legal acceptation of the term, within Rev. St. 1911, art. 3967, declaring that every gift, conveyance, etc., made by a debtor, not upon valuable consideration, shall be void as to prior creditors, unless it appears that the debtor was possessed of property within the state subject to execution sufficient to pay existing debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 132–134; Dec. Dig. ⊙54(2).

For other definitions, see Words and Phrases, First and Second Series, Debtor.]

9. BILLS AND NOTES ⊙445—JUDGMENT PARTIALLY ON NOTES NOT DUE.

Judgment against vendor and vendees on notes given the vendor for the land and indorsed over by him was not null and void because based in part upon notes not due when it was rendered.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1311–1329; Dec. Dig. ⊙445.]

10. JUDGMENT ⊙287—LIEN AND REGISTRATION—JUDGMENT ON NOTES NOT DUE.

The fact that the judgment was rendered in part on the notes not due at the time did not affect the validity of the registration in the county clerk's office of the abstract of judgment, and did not impair the validity of the lien fixed by the registration on the judgment debtor's property.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 567, 568; Dec. Dig. ⊙287.]

On Rehearing.

11. APPEAL AND ERROR ⊙215(1)—RESERVATION OF GROUNDS OF REVIEW—OBJECTION TO INSTRUCTION.

Objection to a charge of the trial court raised for the first time on appeal comes too late.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309, 1310; Dec. Dig. ⊙215(1); Trial, Cent. Dig. § 683.]

12. TRIAL ⊙273—OBJECTION TO CHARGE—STATUTE.

Objection to the charge of the trial court, made only in an inferential and general way by the objections presented in the trial court, is

not a sufficient compliance with Acts 33d Leg. c. 59, requiring objections to the charge to be presented to the trial court before it is read to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 680–682; Dec. Dig. &underline;273.]

13. APPEAL AND ERROR &underline;216(1)—FAILURE TO SUBMIT ISSUE—STATUTE.

By direct provision of Rev. St. 1911, art. 1985, in the absence of a request in writing that an issue be submitted to the jury, the trial court's failure to submit is not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. &underline;216(1); Trial, Cent. Dig. § 627.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Francisca R. Ochoa and husband against Peyton J. Edwards, Sheriff of El Paso County, and T. M. Bower and T. N. Bower, composing the firm of T. M. Bower & Co. From a judgment for defendants plaintiffs appeal. Reformed and affirmed.

R. M. Reed and Walthall & Gamble, all of El Paso, for appellants. Jones, Jones & Hardie and Allen R. Grambling, all of El Paso, for appellees.

HIGGINS, J. This was a suit by Francisca R. Ochoa and husband, Juan D. Ochoa, against Peyton J. Edwards, sheriff of El Paso county, and T. M. Bower and T. N. Bower, composing firm of T. M. Bower & Co., to enjoin the sale of lots 9 and 10 in block 262 of Campbell's addition to the city of El Paso, levied upon under an execution issued upon a judgment rendered in the district court of El Paso county in favor of T. M. Bower & Co. against Juan D. Ochoa, Mark Miller, and J. W. Magoffin, the last two named composing firm of Miller & Magoffin, in cause No. 5321.

### Findings of Fact.

By deed dated July 1, 1902, Juan D. Ochoa and wife conveyed an undivided one-half interest in certain real property to Miller & Magoffin, and in payment therefor the grantees executed and delivered promissory notes payable to the order of Juan D. Ochoa. Upon the same date Juan D. Ochoa indorsed and delivered the notes to T. M. Bower & Co. On February 9, 1905, in cause No. 5321, T. M. Bower & Co. recovered judgment upon said notes against Juan D. Ochoa and Miller & Magoffin. The judgment so rendered was for the aggregate amount of said notes, with interest and attorney's fees, to wit, the sum of $12,434.64, and to secure the payment thereof the vendor's lien reserved in the deed from Ochoa and wife to Miller and Magoffin was established and foreclosed, and the property conveyed by such deed was ordered sold. The judgment recites that certain of the notes upon which the judgment was based were not due at the date the judgment was rendered, and in that connection it was ordered:

"That if the property hereinbefore ordered and adjudged to be sold does not at such sale sell for enough to pay off all the notes sued on, including the principal, interest, and attorney's fees of the notes due, and the principal of the notes not due, then execution shall issue for any balance unpaid upon the notes due or past due at the time of said execution, and for any balance unpaid upon the notes not due execution shall be stayed until said notes, as herein adjudged, becomes due, that is to say, execution may issue from time to time to enforce the collection of the balance unpaid upon any of said undue notes when the same respectively mature. It is further the order and judgment of the court that the moneys derived from the sale of said property shall be applied pro rata to the payment of all of said notes, those due and those not due, and in the event the moneys derived from the sale of said property shall not be sufficient to pay off said notes in full, then and in that event the proceeds of said sale shall be applied pro rata to each and all of said notes, those due and those not due."

A full and complete description, with dates of maturity, is given of all the notes in the judgment.

On March 6, 1905, an order of sale was issued upon this judgment under which the undivided interest in the property sold by Ochoa and wife to Miller and Magoffin was sold for the sum of $6,341, which was applied upon the judgment.

On April 10, 1905, an execution was issued upon the judgment and returned nulla bona.

On July 1, 1913, an alias execution was issued and levied upon certain property of Mark Miller, but nothing was realized upon this execution, as the property upon which it was levied was sold under an execution issued upon another judgment against Miller which had precedence and absorbed all of the proceeds of the sale.

On March 12, 1915, a pluries execution was issued and levied upon said lots 9 and 10 in block 262 as the property of Juan D. Ochoa, and it is to enjoin the sale thereof under this execution that this suit was brought.

On March 17, 1905, an abstract of the judgment in cause 5321 was recorded and indexed in the county clerk's office showing the amount due thereon to be $12,458.44 less a credit of $6,341 upon the principal, interest, and costs, of date April 4, 1905. This credit evidently was the proceeds of the sale of the property upon which judgment of the foreclosure was had and which was sold under the order of sale issued March 6, 1905.

On July 1, 1903, Juan and Francisca Ochoa owned a tract of land in city of El Paso; an undivided one-half thereof being owned by Mrs. Ochoa as her separate estate. The other half interest was owned by the community estate. Upon that date they conveyed the same to W. R. Ascarate for a consideration of $9,000 cash, notes of Ascarate aggregating $5,450, payable to Juan D. Ochoa, and the conveyance of said lots 9 and 10 in block 262 at an agreed valuation of $3,300. Said lots

were conveyed to Francisca R. Ochoa by Ascarate by deed dated August 1, 1903. When this property was conveyed to Mrs. Ochoa there was a dwelling house upon it. A short time after she acquired the property she built another dwelling upon same which was paid for with community funds. There is evidence in the record which would support a finding that the lots and houses are now worth $11,000; that the lots are worth $5,000, and the houses $3,000 each.

On July 9, 1904, the Ochoas conveyed the property in trust to Mariana Ochoa. The trustee was authorized to enter into possession, manage, control, rent, mortgage, or sell the same.

By deed dated June 8, 1909, Mariana Ochoa conveyed the same to Juan D. and Francisca R. Ochoa. By deed dated June 8, 1909, in consideration of $1 cash "and other good and sufficient considerations by me received and thereunto moving," Juan D. Ochoa conveyed the property to Francisca R. Ochoa as her separate property and estate.

The case was submitted to a jury upon special issues, and in response to such issues the following facts were established: That at or prior to the time of making of deed from Ascarate to Mrs. Ochoa there was no agreement or understanding between Juan D. Ochoa and Mrs. Ochoa that the property conveyed by Ascarate to Mrs. Ochoa should be the separate property of Mrs. Ochoa; that it was the intention of Juan D. Ochoa to make a gift to Mrs. Ochoa of the community funds which were used to erect the house upon said property after the property was acquired from Ascarate; that at the date of the gift of said community funds, Juan D. Ochoa did not have in the state property subject to execution sufficient to satisfy his then existing debts; that at the time of the gift of said community funds Mrs. Ochoa knew or had knowledge of the financial condition of Juan D. Ochoa or had knowledge of such facts, a reasonable investigation of which would have given her knowledge of his financial condition; that at the time of or immediately prior to the conveyance of said lots 9 and 10 to Mrs. Ochoa by Ascarate it was not the intention of the Ochoas that such property be taken by her as her separate property in satisfaction of her undivided one-half interest in the property conveyed by the Ochoas to Ascarate; that at the time of the making of the deed from Ascarate to Mrs. Ochoa Juan D. Ochoa was not possessed of property within the state subject to execution sufficient to pay his existing debts; that at or prior to the time of making the deed from Ascarate to Mrs. Ochoa it was not mutually agreed by and between Juan D. Ochoa and Mrs. Ochoa that, in consideration of her taking said property as her sole and separate estate, Juan D. Ochoa should take as his own separate property and estate, or as the community property of himself and wife, all of the other considerations received from the Ascarates. There is another issue which was submitted to the jury which, and, as it appears in the record, reads:

"Do you find from a preponderance of the evidence that at the time Juan D. Ochoa and wife executed the deed of trust dated the 9th day of July, 1904, purporting to convey lots 9 and 10, block 262, Campbell's addition, to Mariana Ochoa in trust, have property in this state subject to execution sufficient to pay his then existing debts?"

This was answered "No." It will be noted it is not clear just what the issue submitted was. It was evidently intended to inquire whether Juan D. Ochoa had property in the state subject to execution sufficient to pay his then existing debts on July 9, 1904.

Upon these findings the court entered a decree refusing to enjoin the sale of the lots, dissolved the temporary injunction enjoining such sale which had been granted at the inception of the suit, and directed the issuance of an order of sale under which an undivided seven-elevenths interest in the lots should be sold and the proceeds applied to payment of the balance due Bower & Co., upon the judgment in cause No. 5321.

### Conclusions of Law.

[1-4] 1. It seems to be well settled that, where property is purchased in part with the separate estate of the wife and partly with community funds, the wife has a separate interest in it proportionate to the amount her separate estate contributed towards its purchase, and that the community interest is proportionate to the amount the community estate contributed towards the purchase money. Texas, etc., v. Clark, 145 S. W. 266; Braden v. Gose, 57 Tex. 37; Cleveland v. Cole, 65 Tex. 402; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352. Parker v. Coop, 60 Tex. 111. This is the rule, where realty is conveyed to the wife, and there is nothing upon the face of the deed to show that it is conveyed to her as her separate estate, and there is no agreement between the parties that such property should be her separate property. Dixon v. Sanderson, 72 Tex. 359, 10 S. W. 535, 13 Am. St. Rep. 801; Clardy v. Wilson, 24 Tex. Civ. App. 196, 58 S. W. 52.

Here lots 9 and 10 were paid for with property in which Mrs. Ochoa owned an undivided one-half interest as her separate estate and the community owned the remaining interest. There was nothing upon the face of the deed to indicate that the lots were conveyed by Ascarate to Mrs. Ochoa as her separate estate, and the findings of the jury establish the fact that there was no understanding, agreement, or intention upon the part of the Ochoas which would vest in Mrs. Ochoa the entire title to the lots as her separate estate to the exclusion of the community estate. It thus follows that, when the lots were conveyed to Mrs. Ochoa,

the community estate owned an undivided one-half interest therein which was subject to the payment of Juan D. Ochoa's debts. The $9,000 in cash and the notes aggregating $5,450 received in further payment for the property conveyed to Ascarate were owned by the respective estates in the same proportions. Of course, this status of the lots, notes, and cash might have been changed by an agreement between the Ochoas that Mrs. Ochoa would take the lots as her separate property in satisfaction of her separate interest in all of the consideration received from Ascarate, and that the husband would take the notes and cash in satisfaction of the community interest, which agreement must have been made at the time of the exchange or prior thereto. But, as is noted above, the findings of the jury establish that there was no such agreement between the parties. Appellants contend that the mere fact that the husband received and used the notes and cash, the wife receiving no part thereof, and the fact that the deed to the lots was taken in the name of the wife, were sufficient to establish the fact that the wife became the sole owner of the lots. But the husband could not so partition the property, without the consent of the wife, by allotting to her the lots which were taken at an agreed valuation of $3,300 in satisfaction of her half interest in the total consideration of $17,750, and allot to the community $14,450 in notes and cash. In other words, the husband, in a case like this, cannot take $14,450 in notes and cash and say that this should belong to the community and that the lots valued at $3,300 should belong to the separate estate of the wife.

[5, 6] The mere fact that the husband did receive and exercise control over the whole $9,000 cash and the $4,000 in notes did not deprive the wife of her one-half interest in said notes and cash, and, unless there was some agreement between the husband and wife, she at all times had an undivided one-half interest in the cash and the notes, although they were in his possession and under his control, and he continued to have an undivided interest in the real property, although the same appeared in her name. The fact that the husband received and controlled the $9,000 in cash and the $4,000 in notes is not at all inconsistent with the fact that the wife owned as her separate estate a one-half undivided interest in said cash and notes, because in any event the husband would be entitled to receive and control, not only the community estate, but his wife's separate estate. It is evident that neither the husband nor wife can partition property in which the community estate owns an undivided one-half interest and the wife as her separate estate owns an undivided one-half interest, without the consent and agreement of the other. It is not to be understood by these statements that the husband could not

189 S.W.—65

make a gift to the wife of his interest in the property without her knowledge or consent, but if appellants would depend upon the proposition of a gift or relinquishment of the husband to the wife of the community interest in the property, then they are confronted with the proposition that at the time of such gift J. D. Ochoa was indebted to appellees upon the obligation upon which they secured their judgment, and the jury has found that at the time Ascarate conveyed the lots to Mrs. Ochoa Juan D. Ochoa was not possessed of property within the state subject to execution sufficient to pay his existing debts.

In view of what has been said, it follows that the various propositions urged in support of the first 11 assignments are not well taken.

2. The refusal of the court to submit special issue No. 1 requested by appellants presents no error, for the reason that the issue was properly and fully submitted to the jury in question No. 1 submitted by the court.

[7] 3. Complaint is made of the refusal to submit this issue:

"Do you find from a preponderance of the evidence that lots 9 and 10 in block 262, Campbell's addition, herein sued for, are now claimed solely by plaintiff Francisca R. Ochoa, together with all improvements therein, as her own separate estate, and that the plaintiff Juan D. Ochoa claims no interest therein?"

This issue was immaterial, and had no bearing upon the rights of the parties. Juan Ochoa's creditors could not be deprived of their right to subject community property to the payment of their claims by the mere fact that Mrs. Ochoa is now claiming it as her separate estate and Juan Ochoa is claiming no interest therein.

[8] 4. It is insisted that Juan D. Ochoa was not a debtor within the meaning of article 3967, R. S., because he was merely an indorser upon the notes held by Bower & Co., and upon which the judgment in cause No. 5321 was rendered. In 13 Cyc. 425, it is said that a debtor is one who by reason of an existing obligation is or may become liable to pay money to another whether such liability is certain or contingent. Tested by this definition, an indorser upon a note should certainly be considered a debtor within the meaning of the statute noted.

In Dodson v. Taylor 53 N. J. Law, 200, 21 Atl. 293, the defendants demurred to a declaration against the heirs and devisees of James Taylor, deceased, upon the ground that it sought to charge the defendants upon an indorsement by their ancestor of a promissory note which had not matured at the time of his death; the defendants insisting that such a contingent liability is not enforceable against heirs or devisees. The statute upon which the action was based was entitled "An act for the relief of creditors against heirs and devisees," reading in part as follows:

"That all and every creditor or creditors, whether by simple contract or specialty, and

whether the heirs are mentioned therein or not, shall and may, by virtue of this act, have and maintain his, her, and their action and actions against the heir and heirs at law of any debtor who had already died, or shall hereafter die, intestate, seised of any messuages, lands, tenements or hereditaments, against the heir and heirs at law and devisee and devisees of such debtor, in case such debtor made any last will or testament." P. L. N. J. 1797, p. 243.

In passing upon this ground of demurrer, the court said:

"With regard to the second ground of demurrer, that, if the indorser of a promissory note die before its maturity, his heirs and devisees are not chargeable under our statute, the demurrants rely upon the case of Farley v. Briant, 3 Adol. & E. 839. There one Briant had become surety for the lessee in a lease which was to terminate on the death of the lessor, and the king's bench decided that the heirs and devisees of the surety could not be held, under 3 and 4 W. & M. c. 14, for rent accruing after the surety's death. The facts of that case are plainly distinguishable in principle from those now before us, for the debt there in suit did not exist when the surety died, and it was then uncertain whether it would ever come into existence, as the death of the lessor might end the term before the rent accrued. But in the present controversy the debt did exist when the indorser died, and was sure to become due by the mere lapse of time; no contingency attached to the debt itself. The money represented by the promissory note would be called a 'debt' with as much precision of statement before the maturity of the note as afterwards. But the difference between the facts of these cases is no more marked than the difference between the laws applicable to them. The divergence of our act from 3 & 4 W. & M. is pointed out by the Chief Justice in Insurance Co. v. Meeker, 37 N. J. Law, 282, and leads reasonably to the conclusion there expressed, that the adjudications upon the English statute can have little weight in any attempt to expound the act of the state, on account of their verbal differences. We are, then, to consider the scope of our statute as indicated by its own terms. It employs three words, which denote the sort of obligations enforceable under it: 'Creditors,' for whose relief it was enacted; 'debtors,' whose heirs and devisees are to be charged; and 'debts,' which are to be recovered by virtue of its provisions. It discloses no other limitations pertinent to the present inquiry. If there be a debt, and the debtor die leaving lands, his heirs or devisees can be sued for the debt by the creditor. This is, beyond dispute, the purport of the statute, and the question now is whether these facts appear in the present case. As already stated, the sum of money mentioned in a promissory note is a 'debt,' in the strictest sense of that term, as well before maturity as afterwards. With equal exactness the holder of the note is called a 'creditor.' The only point for disputation is whether the indorser is a debtor, before his liability becomes absolute by dishonor and notice. But from the time of indorsement he is bound for the payment of the debt, and a person so circumstanced is in both common and legal parlance, a debtor. The contingency affecting his responsibility is one by which he may be released, not one by which he may become bound; it is of the nature of a condition subsequent, not a condition precedent. His obligation as a debtor continues until the payment of the debt or the laches of the creditor discharges him. The statute under review is remedial, and therefore its language must receive a liberal interpretation. So interpreted, the term 'debtor' clearly, I think, embraces the indorser of a promissory note before maturity."

The reasoning of the court in that case is regarded as sound, and the same rule of construction should be applied in this case. An indorser of a promissory note is a debtor in the ordinary, and legal acceptation of the term, and he should be regarded as such within the meaning of our statute which declares that every gift, conveyance, assignment, transfer, or charge made by a debtor which is not upon consideration deemed valuable in law shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this state subject to execution sufficient to pay his existing debts. Article 3967, R. S.

[9, 10] 5. There is no merit in the contention that the judgment rendered in cause No. 5321 was null and void because it was based in part upon notes not due at the date it was rendered. Davis v. McGaughey, 32 S. W. 447; Townes on Pleading (2d Ed.) 273. Neither did the immaturity of the debt affect the validity of the registration in the county clerk's office of the abstract of judgment and did not impair the validity of the lien fixed by such registration upon Juan Ochoa's property.

6. Under the twentieth assignment it is contended that the evidence is insufficient to support the judgment by reason of certain facts recited in the assignment. Conceding the truth of the facts recited in the assignment, they do not render the judgment without any support in the evidence.

7. Under the findings of the jury, the appellees' rights are not affected by the trust deed dated July 9, 1904, by the plaintiffs to Mariana Ochoa, the deed reconveying the property by Mariana Ochoa to plaintiffs dated June 8, 1909, and the deed from Juan D. Ochoa to Francisca R. Ochoa dated June 8, 1909.

8. The twenty-first, twenty-third, and twenty-fourth assignments complain of the form of the judgment entered herein. No complaint is made of the proportionate interest (seven-elevenths) in the lots which the court's decree directs should be sold; that is to say, it is not questioned that an undivided seven-elevenths interest is the proper interest to adjudge to be subject to the payment of Juan Ochoa's debts if any part be so subject. The plaintiff was certainly entitled to a decree enjoining the sale of an undivided four-elevenths interest in the lots, whereas the court refused her any relief. This court will reform the judgment and enter the decree which should have been entered in the court below, viz.:

(1) That the temporary injunction entered April 6, 1915, be dissolved.

(2) That the defendants be perpetually enjoined from selling more than an undivided seven-elevenths interest in said lots 9 and 10 in block 262.

(3) That all other relief asked by plaintiffs be denied.

(4) Adjudging that an undivided seven-elevenths interest in the lots is subject to sale in satisfaction of the judgment in cause No. 5321, and that appropriate process may issue for the sale thereof.

(5) That defendants be refused any further relief.

(6) That plaintiffs recover their costs.

Under the reformed judgment the defendants will be at liberty to procure a venditioni exponas, or such other] process as may be proper and appropriate, and proceed to sell an undivided seven-elevenths interest in the lots levied upon under the execution issued March 12, 1915. The costs of appeal will be taxed against T. M. and T. N. Bower.

We have not undertaken in this opinion to discuss in detail the various assignments of error and supporting propositions. They are so numerous that to do so would protract the opinion to an unreasonable length. We believe that the foregoing conclusions of law sufficiently dispose of all the appellants' assignments and establish that appellees are entitled to subject to the payment of their judgment the interest in the lots which was originally owned by the community estate of Mr. and Mrs. Ochoa.

Reformed and affirmed.

## On Rehearing.

The court gave an instruction which reads:

"You are instructed that when property is acquired by the exchange of property in which the wife owns an undivided one-half interest as her sole and separate estate, and the community estate of the husband and wife owns an undivided one-half interest, then, in the absence of an express agreement between her husband and the wife to the contrary, made before or at the time of the acquisition of such property, the wife owns an undivided one-half interest in such property so acquired and the community estate of the husband and the wife owns an undivided one-half interest in such property."

[11, 12] In the motion for rehearing it is objected that this charge was erroneous because the agreement between the husband and wife might have been either express or implied; that there is evidence tending to show an implied agreement between the Ochoas, for which reason it was error to require them to show an express agreement. This ground of the motion is not well taken. In the first place, this particular objection is now raised for the first time, and it comes too late. The sixth assignment complains of this charge, it is true, but the propositions in the brief supporting the same do not make the point that it was error to confine the jury to a consideration of the existence of an express contract. Furthermore, the objections to the charge presented in the court below fail to make this objection, except possibly in an inferential and very general way, and this is not a sufficient compliance with chapter 59, Acts 33d Leg. requiring objections to the charge to be presented to the trial court before such charge is read to the jury.

[13] In the original opinion it was stated that no complaint was made of the proportionate interest in the property which the court directed should be sold. In the motion for rehearing it is asserted that under the twenty-second and twenty-fourth assignments complaint was so made, and that it was there contended that only four-elevenths interest in the property should have been ordered sold instead of seven-elevenths. We have again carefully examined those assignments and supporting propositions as they appear in the brief, and think they are not susceptible of the interpretation placed upon them in the sixth paragraph of the motion for rehearing. Aside from this, the court found that the house built upon the premises after it was conveyed by Ascarate to Mrs. Ochoa was built with community funds. There is evidence to support this finding. In the absence of a request in writing that the issue be submitted to the jury, the court's failure to so submit the same does not present reversible error. Article 1985, R. S. The original opinion, we believe, properly disposes of all questions raised in appellant's brief.

The motion for rehearing is therefore overruled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes