DODSON et al. v. KENNEDY.  (No. 2641.)*

(Court of Civil Appeals of Texas. Texarkana. Dec. 13, 1922. Rehearing Denied Jan. 4, 1923.)

1. Bankruptcy ⟨key⟩293(2)—Suit to set aside fraudulent transfer must be brought in state court.

Under Bankruptcy Act, § 70e (U. S. Comp. St. § 9654), authorizing the trustee to set aside any transfer which creditors might have avoided unless the purchaser was a bona fide holder for value prior to the adjudication, suit must be brought in the state court; the state laws being applicable.

2. Fraudulent conveyances ⟨key⟩58—All enforceable debts to be considered in determining sufficiency of remaining property to pay debts.

Under Rev. St. art. 3967, providing that transfers of property not made on a valuable consideration shall be void as to existing creditors unless the debtor had property within the state subject to execution sufficient to pay his existing debts, every debt or claim against the debtor that can be enforced in the courts, including an indebtedness constituting a lien on the property conveyed, is to be taken into consideration.

3. Fraudulent conveyances ⟨key⟩272—Burden on grantee under deed of gift to show grantor had sufficient property to pay debts.

Under Rev. St. art. 3967, where a deed from a debtor to his wife was shown to be a gift, the burden was on her to show that the donor had property on hand at the time of the gift sufficient to pay existing debts.

4. Fraudulent conveyances ⟨key⟩57(5)—Deed of gift to wife properly set aside where grantor had insufficient property to pay debts.

Where property conveyed by a debtor to his wife by way of gift was of the value of $18,000 and the property retained by the husband of a probable salable value of about $16,000, while the husband's debts amounted to about $18,688.71, the deed was properly set aside under Rev. St. art. 3967, especially where the husband subsequently disposed of most of his property without materially decreasing the indebtedness, and, when a bankruptcy petition was filed less than a year later, had property on hand sufficient to pay only a small percentage of his debts.

Appeal from District Court, Upshur County; J. R. Warren, Judge.

Action by W. A. Kennedy, trustee, against Mrs. Amy Grace Dodson and others. Judgment on a directed verdict for plaintiff, and defendants appeal. Affirmed.

T. H. Briggs, of Gilmer, J. A. Ward, of Mt. Pleasant, and C. E. Bryson, of Pittsburg, for appellants.

C. G. Engledow, of Pittsburg, J. M. Burford, of Dallas, and Carroll Florence, of Gilmer, for appellee.

LEVY, J. On October 19, 1920, C. A. Dodson executed to his wife, Mrs. Amy Grace Dodson, a deed conveying to her, "in consideration of one dollar and the true love and affection I bear to my wife," several tracts of land, aggregating 354 acres, in Camp and Upshur counties. The first described tract of 204 acres in Upshur county was, as recited in the deed, "mortgaged to the Farm Loan Company for the sum of about $2,700 not yet due." The deed was recorded in Upshur county on the day of its execution. On October 17, 1921, C. A. Dodson filed in the federal court for the Eastern district of Texas a petition in bankruptcy. Upon his petition C. A. Dodson was duly adjudicated a bankrupt, and W. A. Kennedy was appointed trustee of the estate. On November 26, 1921, the trustee was authorized and directed to file suit in Upshur county to set aside the deed to the above land made to Mrs. Dodson. The petition sought to set aside the deed upon the grounds: (1) That at the time of and after the conveyance of the 354 acres of land C. A. Dodson was not then possessed of sufficient property or assets to pay his existing debts; (2) that the deed to the 354 acres was made and delivered with the intent to hinder, delay, and defraud existing creditors.

The defendants both generally and specially denied the allegations of the petition.

After hearing the evidence, the court peremptorily instructed the jury to return a verdict in favor of the plaintiff. In accordance with the verdict so returned, a judgment was entered in favor of the plaintiff. The appellants seek to revise the ruling of the court in giving the peremptory instruction to the jury.

[1] It is believed that the court did not err in giving the instruction, and that the judgment should be affirmed. The federal Bankruptcy Statute, under section 70e (U. S. Comp. St. § 9654), authorizes the trustee in bankruptcy to recover property disposed of by the bankrupt; that is to say, to set aside any transfer of or charge upon property which the creditors of the bankrupt might have avoided under the law, unless the purchaser thereof was a bona fide holder for value prior to the date of the adjudication of bankruptcy. Under this section the suit must be brought by the trustee in the state court, as here done; the state laws being applicable. In this state an existing creditor at the time can avoid disposition of property by a debtor as follows: (1) Where a gift or transfer of real personal property is given with intent to delay, hinder, or defraud creditors or other persons of or from what they are or may be lawfully entitled to; and (2) where a gift or transfer of property is made by a debtor which is not upon consideration deemed valuable in law, unless it appears that such debtor was then possessed of

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction February 14, 1923.

property within this state subject to execution sufficient to pay his existing debts. Articles 3966, 3967, R. S. of 1920. The questions, therefore, are: Was the conveyance in suit made with the intent on C. A. Dodson's part to delay, hinder, or defraud his creditors? Or, did he not have sufficient property remaining located in this state subject to execution to pay his then existing debts? If, under the evidence, either of the questions is to be answered in the affirmative, then the ruling of the court, giving the instruction, would not be error. According to the undisputed evidence, it appears that the conveyance of the 354 acres was a gift to the wife of property of the value, as shown, of $50 an acre, aggregating about $17,700, and that at the time the conveyance of the land was so made there were owing by the husband existing debts aggregating almost $20,000.

[2] According to Mr. Dodson's own admission, he owed at the date of the conveyance to his wife debts amounting to "$15,558.71," exclusive of taxes for the year 1920 of $175.-99, and exclusive of the indebtedness due the Federal Land Bank. The amount due the Federal Land Bank, and which was a lien against part of the land conveyed to the wife, was, as Mr. Dodson testified, $3,000, less $45, together with interest. Mr. Dodson admitted that he owed the Federal Land Bank as his indebtedness that sum of money; consequently that amount of indebtedness, with the amount of taxes, for 1920, would have to be added to the admitted sum of $15,558.71, which would aggregate, exclusive of interest, the sum of $18,688.71. For in computing the indebtedness of the debtor every debt or claim against the debtor that can be enforced in the courts is to be taken into consideration. The property C. A. Dodson had on hand at the time he made the deed to his wife consisted, according to his testimony, of 9 mules, 7 horses, 1 colt, 4 wagons, 1 buggy, 1 automobile, 50 head of cattle, 3 notes secured by chattel mortgage of the total of $375, 20 bales of cotton, vendor's lien note for $662, and 206 acres of land. The value placed upon this property by Mr. Dodson was, as he testifies, $20,372.50. But out of this list of property on hand Mr. Dodson claimed as exempt from forced sale at that time 10 head of the cattle, of the value of $400. Therefore this sum of $400 must be deducted from the total valuation made by Mr. Dodson, because the statute provides that the property of the debtor, retained, or "then possessed of," must be "subject to execution." Further, according to the defendants' evidence it appears that two of the mules were mortgaged to their full value, and that the maker of one of the notes listed was insolvent and in the penitentiary under penal sentence, and that the 206 acres of land, valued at $12,360, was incumbered in the sum of $8,200 in lien notes

past due and bearing interest and providing for attorney's fees, and that the taxes on the land for 1920 were due and unpaid. It is the rule that in computing "the sufficiency" of the property retained by the debtor property subject to mortgage is to be estimated at what the equity of redemption would probably yield when subjected to forced sale. Walker v. Loring, 89 Tex. 668, 36 S. W. 246. In this view, then, Mr. Dodson at the time of the deed of gift to his wife had, taking his own valuation, about $16,000 worth of property with which to pay debts owing, as he admits, in the sum of about $18,688.71.

[3, 4] As the deed to the wife was attacked as and conclusively shown to be a gift, the burden was upon the defendant to show that the donor and the debtor has, as required by the statute, property on hand at the time of the gift "sufficient" to pay existing debts. Dixon v. Sanderson, 72 Tex. 359, 10 S. W. 535, 13 Am. St. Rep. 801. Considering, then, the undisputed proof, from the standpoint alone of the defendant, it would not appear that the burden of proof was discharged and met when it appears, as here, that the gift was of the value of almost $18,000, and the amount of indebtedness existing was about $18,688,71, while the property retained by the donor was of a probable salable value of about $16,000.

Again, it further appears that, about one year lacking two days from the date of the gift to the wife, C. A. Dodson filed voluntary application in bankruptcy. Within the year before the bankruptcy application, Mr. Dodson disposed of most of his property, besides the gift, and the indebtedness owing was decreased but little. His total indebtedness at the date of the petition in bankruptcy was about $19,500, consisting of nearly the same debts owing at the date of the gift to the wife. Concerning the property on hand at the date of the gift, the defendant testified that of the 50 head of cattle he had killed 3 for beef, 3 had died, he had given 2 to his son, and had let one of his brothers have 3, and another brother 2, and that 10 were claimed as exempt. As to the 9 mules, 2 were claimed as exempt, 1 was given to his daughter, 1 was given to his son, 1 sold to a son, and 1 sold to a brother. One horse was given to his son. As to the 4 wagons, 1 was claimed as exempt, and 2 were sold to his sons. The 20 bales of cotton were turned into cash in the sum of $2,000. Mr. Dodson testified:

"I used the majority of the money that I got from the sale of the cattle and mules that I sold to run the farm. I did not use all of the proceeds of the cotton that I sold with which to pay my debts. The money that I got from the cattle, cotton, and everything else went in part on my debts, and in part it did not. The debts I paid were: [Here follow the items.]"

The items aggregated $775. The additional obligations that he incurred were in excess of what he had paid. He further testified:

"I have got no other property to apply on my debts now other than 2 mules, not mortgaged, valued at $175; 4 head of cattle, of value $80; 1 buggy, of value $10; 1 wagon, of value $75. I have got no other personal property now to turn over (to the trustee) except that (described above) and those notes listed and the equity in the Townsend tract (206 acres). That is all of it; that is the whole thing."

All of the property on hand at date of bankruptcy petition was of so small value as to reach only a small per cent. of payment on the debts which were owing at the time of the gift. As from the facts it appears conclusively that, at the time of the gift to the wife, the donor had heavy subsisting liabilities, was of doubtful solvency, and that failure and insolvency to practically the same large indebtedness followed, and the assets wholly insufficient to pay same, there is little room for a conclusion other than that the gift to the wife was within the prohibition of the statute and void. It was not error to give a peremptory instruction to the jury.

We have considered each of the other assignments of error, and conclude that no reversible error is presented. Therefore each of the assignments of error is overruled.

Affirmed.