### TEAGUE et al. v. FAIRCHILD et al.
### (No. 1018—4926.)

Commission of Appeals of Texas, Section B. April 3, 1929.

King & Wood and Woods, John & Cox, all of Houston, for plaintiffs in error.

Boyles, Brown & Scott, of Houston, for defendant in error.

SHORT, P. J. On July 1, 1919, Henry Teague, the husband of the plaintiff in error, Elsie Teague, delivered his two certain promissory notes, each for the principal sum of $500, to the defendant in error, C. M. Fairchild, to whom said notes were payable, the payment of which was secured by a lien placed upon certain real estate belonging to the community estate of Henry Teague and his wife. These notes not having been paid, C. M. Fairchild instituted suit thereon, asking for judgment and foreclosure of the lien on the real estate. Judgment was afterwards rendered in favor of Fairchild for the debt and a foreclosure on the lien on the real estate was ordered. No sale of the real estate has ever been made. However, pending the suit, above mentioned, Fairchild filed this suit in the nature of an application for garnish-

ment before judgment, wherein he asked and secured the issuance and execution of writ of garnishment to Jas. C. Davis, as federal agent appointed by the President of the United States under the Act of Congress on February 28, 1920 (41 Stat. 456), alleging the necessary facts and stating in effect that he has reason to believe, and does believe, that the said Jas. C. Davis, federal agent, and the Texas New Orleans Railroad Company and Houston & Texas Central Railroad Company are indebted to Henry Teague by virtue of a certain judgment rendered on or about January 18, 1922, in favor of Henry Teague, for the sum of $9,875 rendered in Fifty-fifth judicial district court of Harris county on the date above mentioned, which judgment was then on appeal to the Court of Civil Appeals. This judgment was afterwards affirmed for $1,800, having been reduced by the Court of Civil Appeals to that amount. The garnishee answered, in effect, that he had this amount of money, that is to say, $1,800 with some interest, but that he had been informed that the judgment had been transferred, and tendered the money in court to be paid to whomsoever it belonged. In the meantime the plaintiff in error Elsie Teague, and also the law firm of Wood, King & John, filed their pleas of intervention alleging that this fund belonged to them, that is to say, that part belonged to Elsie Teague and the remaining part to said law firm. No question is made as to the claim of the law firm to one-half of the fund, the whole of which amounted to something over $2,000; but the remaining interest is claimed by Fairchild to be subject to garnishment for his debt against Henry Teague. Elsie Teague, the wife, claimed this remainder as a part of her separate estate, by virtue of a written assignment dated the 26th day of January, 1923, executed in her favor by her husband, Henry Teague. Henry Teague also answered, adopting in so far as he was able to do legally all of the allegations in the petition of intervention. The transfer of the fund not claimed by the law firm is based upon the alleged consideration of $1,000 in cash, paid by the wife to the husband, and the balance due upon a certain vendor's lien note admittedly belonging to the separate estate of the wife. Fairchild answered the plea of intervention alleging the transfer to be fraudulent made by the husband to the wife and to be a subterfuge on the part of Henry Teague to place his funds beyond the reach of creditors, including the said Fairchild, and attacking it as being void for want of any valuable consideration, and further alleging that the balance due upon the vendor's lien note is shown by the transfer also to have been applied to the payment of the purchase price of a certain lot adjacent to the homestead of the Teagues, and that the transfer on its face shows that Henry Teague received nothing for himself as a consideration for the assignment by him to his wife. He further alleged that the wife had knowledge and notice of the fact that her husband was insolvent, and conspired with him to transfer the property in question in order to defeat the creditors of her husband, including Fairchild. The case was tried without the intervention of a jury, and resulted in a judgment in favor of the interveners. From this judgment an appeal was taken by Fairchild to the Court of Civil Appeals of the First Supreme Judicial District, and that court reversed the judgment of the district court and rendered judgment for Fairchild, the defendant in error. 295 S. W. 640.

The trial judge filed his conclusion of law in fact, in substance, as follows: (1) "That Teague executed the notes and also the deed of trust on certain real estate to secure their payment, as alleged by the defendant in error, Fairchild, on which notes no payment was ever made." (2) "That on January 13, 1921, the wife of Henry Teague recovered a judgment against the Director General of certain railroads for $3,500 with interest, by reason of personal injuries suffered by the wife at the hands of the agent of the Director General, which judgment was afterwards, upon appeal, affirmed, and the money paid over to the attorneys representing the wife in said suit, two-thirds of which was delivered to the wife, concerning which two-thirds there was no express agreement between the wife and the husband that this part of the judgment should be collected by the wife and should be her separate estate, but both the said husband and wife regarded it and treated it as her separate estate, and the same was deposited in the bank and interest-bearing certificate of deposit issued therefor to the wife." (3) "That on January 21, 1922, the husband, Henry Teague, recovered a judgment, a part of the proceeds of which is the $1,000 above mentioned, against the same railroads for damages growing out of same transaction, in which judgment was rendered in favor of the wife. This judgment originally was for $9,875, but was afterwards affirmed for only $1,800, which, with interest, amounted to about $2,100 when it was paid. One-half interest of this judgment in favor of the husband belonged to the law firm of Wood, King & John." (4) "That Henry Teague assigned the remaining one-half interest in the judgment to his wife, the plaintiff in error, Elsie Teague, on January 26, 1923, as evidenced by a written assignment, the $1,000 cash mentioned in the assignment being actually paid by the wife to the husband out of moneys collected by the wife on the judgment in her favor, and this $1,000 was actually used by Henry Teague to make a payment on a debt against the homestead, this homestead being the community property of the husband and wife, while the $2,800 ven-

dor's lien note mentioned in the assignment was used by Henry Teague to purchase a strip of land adjoining the homestead, which strip of land was conveyed to the wife." (5) "That during the latter part of 1922 and shortly prior to the date of the assignment Fairchild was negotiating with Henry Teague and with Geo. S. King, his attorney, as well as the attorney of his wife, in an endeavor to collect the debt from Henry Teague to him, and that Henry Teague, at that time had no assets subject to judgment, unless the judgment in his favor against the federal agent was then subject to execution or other legal process." (6) "That the wife would not have paid over the $1,000 or transferred the note described in the assignment except for her belief that she was, for the consideration mentioned, buying from her husband an undivided one-half interest of the judgment of her husband against the federal agent." (7) "That Fairchild had failed to prove that the husband conspired to transfer the property of Henry Teague in order to defraud the creditors of Teague, including Fairchild, or to place the property of Henry Teague beyond the reach of his creditors, or that the assignment of the judgment by Henry Teague, to his wife, was given with intention to delay, hinder, or defraud any creditor, the court finding, as a fact, that the wife, for a valuable and sufficient consideration, paid at the time, was buying from her said husband his one-half interest in the judgment in favor of the husband." (8) "Neither of the garnishees owed Henry Teague any sum of money at the time the writ of garnishment was served, or any time thereafter, unless the judgment in favor of Teague, against the federal agent, was subject to such writ under the facts found." From these facts the trial judge concluded that Fairchild was not entitled to recover as against the garnishee or any of the interveners.

A motion to that effect being filed, the trial judge also found the following additional facts: (1) "The $2,800 vendor's lien note mentioned in the assignment being transferred and delivered by the wife to the husband was thereafter used by the husband to purchase a strip of land adjoining the homestead, which strip of land was conveyed to Elsie Teague as her separate property." (2) "That Henry Teague, from the latter part of 1922 to the date of the assignment, was unable to pay the note sued on in this cause." (3) "That the plaintiff did not ask the judgment against the garnishee alone." (4) "That in the case of C. M. Fairchild v. Henry Teague and wife, the trial court rendered judgment for Fairchild against Henry Teague for the sum of $1,668.74 on certain promissory notes sued on therein and foreclosed the deed of trust lien against Henry Teague and his wife on certain property located in the city of Houston, Harris county, Texas."

The Court of Civil Appeals based its judgment, in reversing the judgment of the trial court and rendering judgment against the interveners, on two grounds, one being that the assignment from Teague to his wife, of the fund in dispute, was without consideration, and the other that the assignment was fraudulent as to Fairchild and void on that account because the wife knew of the husband's fraud. From this judgment the plaintiff in error, Elsie Teague, successfully prosecuted a writ of error to the Supreme Court, the writ being granted on the first assignment in the application, which is that the Court of Civil Appeals erred in rendering judgment in favor of defendant in error, Fairchild, for any sum absolutely, since the undisputed testimony was that Fairchild had a judgment foreclosing his lien on real estate, and further shows that said real estate had not been sold.

This assignment must be sustained, for the reason that while the defendant in error, Fairchild, had the legal right, under the allegations of his affidavit, to garnishee the fund in the hands of the federal agent, yet with the record in this condition he did not have the right to ask the court to render a final judgment in his favor for any definite sum. Fairchild having accepted from Teague the real estate, as security for the debt, due by Teague to Fairchild, the former was under the duty to exhaust this security before he would be entitled to seize any other property which might belong to Teague and subject the property so seized to the payment of his debt. The means used by Fairchild, in issuing and serving a writ of garnishment upon the custodian of the fund, was, in legal effect, an attempted appropriation of the fund to the payment of the judgment against Teague without first having exhausted the fund upon which he and Teague had agreed should be appropriated to the payment of the debt, evidenced by the judgment. Especially is this true since he had ratified this agreement by securing a judgment against Teague in which the lien on the fund was foreclosed. In the absence of any pleading and proof that this property, upon which this lien was foreclosed, had no market value, no court would have the authority, either to assume it had no market value, or to ignore Teague's right to have this property sold and the proceeds applied to the satisfaction of the debt, to the extent of the proceeds of the sale. Neither could any court, under the conditions last above stated, render a judgment against Teague in a garnishment proceeding until there had been a sale of the property set apart by the parties with which to pay this judgment, and the value of the property, so set apart, had been legally ascertained and the proceeds applied, as the parties had agreed. A writ of garnishment, successfully prosecuted, performed the same legal office

as a writ of execution. Article 3783, R. S. 1925, in stating the requisite of an execution, among other things, declares that "if the judgment be for money simply, it shall require the officer to satisfy the judgment out of the property of the debtor, subject to execution"; and, further, "if the judgment commands the sale of particular property for the satisfaction thereof, the writ shall be framed accordingly." In construing this article the Supreme Court, in Bailey v. Block, 104 Tex. 101, 134 S. W. 323, speaking through Judge Williams, after discussing several other articles and the practices thereof, says: "To all of these practices one prominent requirement is common, and that is that the foreclosure sale is to be made, the proceeds applied and the deficiency thus mathematically ascertained before any proceeding against the property of the debtor other than that mortgaged is allowed"—citing Jones on Mortgages (6th Ed.) par. 1709a et seq.; Freeman on Judgments, par. 10; 27 Cyc. 1746, 1751, 1752, 1754, 1756, 1760, 1761. "Neither the court nor the clerk is allowed by such statutes to estimate in advance the proceeds that will probably result from a sale and award judgment or execution for a probable balance"—citing Seligson v. Collins, 64 Tex. 314, Ward v. Billups, 76 Tex. 466, 13 S. W. 308. In the case from which the quotation is made, similar to the record in this particular, the sheriff has sold other property of the debtor without first having sold the property set apart for the payment of the debt in accordance with the judgment rendered, and it was held that this sale was void.

 So we hold that the effort of Teague's creditor to subject, by garnishment, the fund in the hands of the federal agent to the payment of his debt, resulting in the appropriation of the fund without first having sold the property set apart to pay the debt, was premature, and the judgment rendered by the Court of Civil Appeals is erroneous. The conclusion we have reached on this subject necessarily results in a reversal of the judgment of the Court of Civil Appeals. Whether the defendant in error is entitled to have the case remanded will depend upon the solution of other questions which we will now discuss. If the fund sought to be subjected to the husband's debt was not subject to execution or writ of garnishment, then it would be immaterial that the transfer was without consideration, or that it was made to defraud the husband's creditor with knowledge of that fraud on the part of the wife.

It is provided by section 15, art. 16 of the Constitution that: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property." Under this provision of the Constitution, no property is, or can become, the separate property of the wife, unless it was owned or claimed by her before marriage, or unless it was acquired afterwards by gift, devise, or descent, subject of course to the rule in cases of mutation, hereinafter discussed. As said in Arnold v. Leonard, 114 Tex. 540, 273 S. W. 801: "The test during coverture relates to the method by which the property is acquired. If the method be by gift, devise, or descent, to the wife, then the Constitution makes the property belong to the wife's separate estate. If the method of acquiring during marriage be different, then the property falls without the class of separate estate of the wife as fixed by the Constitution." Ezell v. Dodson, 60 Tex. 331.

Under the facts of this case, the moneys received by the wife, in satisfaction of her claim for damages for personal injuries, did not constitute a part of her separate estate. Koy v. Schneider, 110 Tex. 378, 218 S. W. 479, 221 S. W. 880; Dickson v. Strickland, 114 Tex. 176, 265 S. W. 1012. The other piece of property used by the wife in exchange for the transfer by the husband to her to the fund in question was clearly a part of her separate estate. The transfer of this separate property to the husband would make it, in the hands of the husband, a part of his estate, unless the parties intended to the contrary. However, it appears that the husband, after receiving this portion of his wife's separate estate, used it to purchase a lot, the deed to which was taken in the name of the wife, and was made by the recitations in the deed a part of her separate estate. This transaction, in the absence of proof to the contrary, had the legal effect of changing the character of the wife's separate estate from that of a promissory note to that of the real estate purchased with the proceeds thereof. Dixon v. Sanderson, 72 Tex. 362, 10 S. W. 535, 13 Am. St. Rep. 801. It appears, from the record, that the trial court found, as a fact, which finding is not assailed by the judgment of the Court of Civil Appeals, "that the wife would not have paid over the $1,000 or transferred the note described in the assignment except for her belief that she was, for the consideration mentioned, buying from her husband an undivided one-half interest of the judgment of her husband against the federal agent." Since we must give effect to this finding of fact, it not having been set aside by the Court of Civil Appeals on the ground that it is not supported by sufficient legal testimony, it necessarily follows that the transfer of this note, by the wife to the husband, did constitute a valuable consideration, passing from her to her husband for the transfer she received from him of the fund in question.

█ The other part of the consideration expressed in the transfer, from the husband to the wife, of the fund in question, is $1,000, a part of the proceeds of the judgment recovered by the wife for personal injuries in-

flicted upon her by the employees of the federal agent. The proceeds of this judgment, in favor of the wife, were paid to the wife, who deposited the money in the bank and thereby created between the bank and the wife the relation of debtor and creditor. This was done with the knowledge and consent of the husband, and this knowledge and consent clearly evidenced a gift of his interest in the judgment to the wife and empowered her to use it and control it for her own individual purposes. The proceeds of this judgment, recovered by the wife, when received, constituted a part of the community estate of the husband and wife. But the husband having by his conduct clearly evidenced an intention to make the same a gift to the wife, this action on his part had the effect of making this fund a part of the separate estate of the wife. Southern Pacific Co. v. Ulmer (Tex. Com. App.) 286 S. W. 193. This $1,000 was actually delivered by the wife into the possession and placed under the exclusive control of the husband. Moreover, the husband used it to pay a community debt. In other words, the wife parted with $1,000 belonging to her separate estate and the husband used this $1,000 to pay a community debt. As recited above, the trial court found, in its conclusions of fact, that the wife would not have parted with this $1,000 except for her belief that she was buying from her husband, for a valuable consideration, an undivided one-half interest of the judgment of her husband against the federal agent, which constitutes the fund sought to be garnisheed. We therefore are of the opinion that the Court of Civil Appeals erred in concluding that the assignment from the husband to the wife of the fund in question was without a valuable consideration.

It may be conceded that the husband had the intention to defraud his creditors, and especially the defendant in error, when he executed the transfer to his wife of the fund in question, the purpose being to hinder, delay, and defraud his creditors. It may also be conceded that the wife knew of this intention and purpose. But since she parted with her separate estate, in exchange for the fund in question, neither the intention and purpose of the husband to defraud his creditors, nor the knowledge of the wife that her husband had such intention and purpose, could have any effect upon the validity of the title which the wife acquired to the fund in question, since that title was acquired for a valuable consideration, which consideration was a part of the separate estate. This $1,000, the possession with which she parted in exchange for the fund in question, which belonged to the community estate of herself and husband, had, with the knowledge and consent of her husband, passed into her exclusive possession, and was under her actual and exclusive control, which control she had exercised by delivering it to a bank and receiving in exchange therefor the promise of the bank to pay her, upon her demand, a like sum of money. None of these transactions were tainted with any suspicion of an intention to defraud the husband's creditors. The legal status of the $1,000, with the possession of which she parted in exchange for the fund in question, was the same as that occupied by the promissory note. The promissory note represented the proceeds of certain real estate, apparently owned by the wife at the time of her marriage. The $1,000, which she paid to the husband was equally protected from forced sale by her husband's creditors on account of the means by which she had acquired it. This is especially true because of the finding of fact, above quoted, by the trial court, which finding is not assailed by the pleadings of the defendant in error or by any proof even though such pleadings existed, and is not discussed by the Court of Civil Appeals in its opinion. We therefore conclude that the fund in question, sought to be garnisheed by the defendant in error, under no circumstances presented by this record could be made finally liable to the demand of the defendant in error, and therefore the remanding of this case for another trial would avail the defendant in error nothing. He has his judgment, and still has the right to have it enforced against the husband by a sale of the property on which the lien had been foreclosed and the proceeds applied to the payment of the husband's debts. We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.