**A. WOLFSON'S SONS, INC., Appellant,**

v.

**FIRST STATE BANK OF CORPUS CHRISTI, Appellee.**

No. 13-84-448-CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 30, 1985.

Rehearing Denied Sept. 19, 1985.

William H. Keys, Corpus Christie, for appellant.

William R. Anderson, Corpus Christie, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

This is a pre-judgment garnishment case. After a hearing, the court refused to dissolve a writ previously issued in favor of garnishor First State Bank of Corpus Christi. We reverse the judgment of the trial court.

First State Bank of Corpus Christi perfected a security interest in "all furniture, fixtures and inventory" of four stores operated by Krebcon Corporation and others under the assumed name of Wearhouse Jeans. The security agreement and financing statement named Conard Retail Corporation as the debtor.

Subsequent to this security agreement with the bank, Conard Retail Corporation entered into an agreement with A. Wolfson's Sons, Inc., whereby Wolfson's, as Rubaine Company, would supply expertise as retail consultants and sales promotion specialists.

Under the "Rubaine Agreement," Conard was to deposit all receipts for sales into an account held by Rubaine with distribution by Rubaine to each as they were so entitled in accordance with other provisions of the contract. The agreement also permitted Rubaine to place merchandise in the stores on a consignment basis, and Rubaine did so.

Wolfson's Sons, Inc. filed a financing statement covering,

"All inventory, now or hereafter acquired, including all inventory shipped by secured party to debtor on a consignment basis and designated consignment inventory by a special marking Rub, 999 or 'NAT'."

A "going out of business sale" was commenced, and receipts were deposited as per the terms of the Rubaine Agreement into the A. Wolfson's Sons, Inc. account at Mercantile National Bank.

When the newspaper ad concerning the going out of business sale came to the attention of First State Bank, it filed suit on Conard and procured a writ of attachment and had the sheriff close the stores and seize the inventory. While a deputy was executing the writ, an employee of First State Bank discovered the deposit book for the account at Mercantile National Bank.

First State Bank, in a separate action out of which this appeal arose, procured an ex parte order that Mercantile National Bank appear and show what funds it possessed that belonged to First State Bank's debtor, Conard Retail Corporation. The order also froze the A. Wolfson's Sons, Inc. account.

After the writ of garnishment was issued, A. Wolfson's Sons, Inc. intervened and moved to dissolve or modify the writ. After a hearing, the court granted judgment in favor of First State Bank for all funds in the account, less attorney's fees for the garnishee.

At the outset, appellee argues that appellant is barred from the Courts of Texas by virtue of Tex.Bus.Corp.Act Ann. art. 8.18(A.) (Vernon 1980). Appellee's argument that appellant's intervention is in the nature of a plaintiff's petition is without merit. Article 8.18(B.) permits a corporation to defend an action.

In its first point of error appellant alleges the trial court erred in overruling its motion to dissolve the writ of garnishment because garnishor First State Bank offered no evidence as to the assets or property of

the debtor within the State subject to execution.

Though there was evidence which suggests an attachment had issued, *see* Tex. Rev.Civ.Stat.Ann. art. 4076(1.) (Vernon 1966), First State Bank relied upon art. 4076(2.) in its application for writ of garnishment. This latter part of the statute provides as follows:

ARTICLE 4076. Who may issue and when

The clerks of the district and county courts and justices of the peace may issue writs of garnishment, returnable to their respective courts, in the following cases:

2. Where the plaintiff sues for a debt and makes affidavit that such debt is just, due and unpaid, and that the defendant has not within his knowledge property in his possession within this State, subject to execution, sufficient to satisfy such debt; and that the garnishment applied for is not sued out to injure either the defendant or the garnishee.

Texas R.Civ.P. 664a entitled "Dissolution or Modification of Writ of Garnishment" states:

"The writ shall be dissolved unless, at such hearing, the plaintiff shall prove the grounds relied upon for its issuance...."

▪ In *Huie—Clark Joint Venture v. American States Insurance Co. of Texas*, 629 S.W.2d 109 (Tex.App.—Dallas 1982, writ ref'd n.r.e.), the court construed the rule to require proof by the garnishor of *each* ground in art. 4076(2.). *Id.* at 110–11. We hold that First State Bank failed to meet its burden to show that its debtors Virgil Conard, Conard Retail Corporation, Krebcon Corporation and Conard Corporation did not have within First State Bank's knowledge, property in their possession within Texas, subject to execution, sufficient to satisfy the debt. No evidence whatever was offered on this point. Consequently, the trial court erred in refusing to dissolve the writ. Appellant's first point of error is sustained.

By its second point of error appellant alleges the trial court erred in refusing to dissolve the writ because there was no evidence that garnishor First State Bank exhausted its security by foreclosing its security lien and selling the collateral attached by it. Appellant argues this was a necessary prerequisite, citing *Teague v. Fairchild*, 15 S.W.2d 585 (Tex.Comm'n App.1929, judgmt adopted) and *Weihausen v. First National Bank of Bryan*, 501 S.W.2d 477 (Tex.Civ.App.—Waco 1973, no writ).

We have examined these cases and while they may be distinguishable on the grounds that the underlying security was real property, we find that the general rule that a writ of garnishment may not issue when the indebtedness is contingent or uncertain has been applied when the security is personal property, *Household Finance Corp. of Dallas v. Reyes*, 408 S.W.2d 739, 740 (Tex.Civ.App.—Texarkana 1966, writ dism'd), or an intangible. *Hale County State Bank v. Bray*, 97 S.W.2d 337 (Tex. Civ.App.—Amarillo 1936, writ ref'd) (promissory vendor's lien notes).

▪ At the time of the hearing the executive vice-president of First State Bank, garnishor, testified that the jeans attached had not been sold. The trial court erred in refusing to quash the writ of garnishment. The writ was premature when First State Bank acted without first having sold the property set apart to pay the debt. *See Weihausen*, 501 S.W.2d at 479. Appellant's second point of error is sustained.

▪ In reply to appellant's second point of error, First State Bank argues:

It is not necessary for the First State Bank to have foreclosed on part of its secured personal property; it has a right to foreclose on all its secured personal property which would include the money in Mercantile National Bank. If a different holding were made, no Security Agreement would be worth the paper it was printed on....

We disagree with appellee's mordant assessment of the effects of our decision. Appellee retains all the rights and remedies available under the Texas Uniform Com-

mercial Code governing its security agreement and any other statutory or common law remedy. Tex.Bus. & Com.Code Ann. § 1.103 (Vernon 1968). However, in the instant case, plaintiff chose to proceed by writ of garnishment—not foreclosure. When plaintiff elected garnishment, it must comply with the law applicable to that remedy.[1] Nothing we have said interferes with appellee's right to enforce its security agreement against the after acquired inventory of its debtor, or the proceeds thereof.

In its third point of error appellant alleges the evidence is legally or factually insufficient to show what funds, if any, constituted identifiable cash proceeds from the sale of goods owned by Wearhouse Jeans in which First State Bank could claim a security interest. Appellant's fourth point of error is similar, alleging that there is no evidence or insufficient evidence as to what portion of the funds was owned by Wearhouse Jeans. Appellant's fifth point of error complains there is no evidence or insufficient evidence that its jeans were commingled with those belonging to Wearhouse Jeans.

■ The short answer to appellant's points of error is that First State Bank's security interest in *all* inventory was sufficient to give notice to appellant that First State Bank had perfected a security interest in not only the inventory possessed by Wearhouse Jeans at the time of execution of the security agreement, but also inventory acquired thereafter until the debt was paid. *Borg-Warner Acceptance Corp. v. Wolfe City National Bank*, 544 S.W.2d 947, 951 (Tex.Civ.App.—Dallas 1976, no writ).

■ Maurice Natelson, a vice-president of A. Wolfson's Sons, Inc., testified that his

company failed to notify First State Bank that Wolfson's jeans would be placed in the Wearhouse Jeans Stores. Because Wolfson's failed to comply with Tex.Bus & Comm.Code Ann. § 9.312(c) (Vernon Supp. 1985), all of the proceeds from all of the sales were subject to First State Bank's security interest. *Ford Motor Credit Co. v. First State Bank of Smithville*, 679 S.W.2d 486 (Tex.1984). In that First State Bank's perfected security interest in the collateral has priority, the issues of commingling and whether Wolfson's could identify its jeans by special tags are not relevant. Appellant's fifth point of error is overruled.

■ Appellant's third and fourth points of error are directed to a finding by the trial court as follows:

"7. All of the funds in First Mercantile Bank in Account No. 086104-0 consisted of the proceeds of sale of the inventory of jeans from the Wearhouse Jeans Stores in Corpus Christi."

There was evidence at the hearing, and the exhibits indicate, that the garnished account was opened with a $10,000.00 deposit from Wolfson's. Plaintiff's exhibit 12 reflects a debit of approximately $8,000.00. Plaintiff's exhibit 13 reflects a check was drawn for $4,300.00. These amounts exceed the deposit by appellant. We therefore overrule appellant's third and fourth points of error.

Appellant's points of error six through eight complain of findings and conclusions by the court concerning appellant's ownership and operation of the Wearhouse Jeans stores. Appellant's ninth point of error complains of a conclusion by the court that appellant was in violation of Art. 8.18 of the Business Corporation Act.

1. We note that it is a well established rule that by *strict compliance* with our garnishment statutes a plaintiff may be subrogated to the rights of his debtor, but the plaintiff merely steps into the shoes of his debtor to enforce against the garnishee whatever rights the debtor could have enforced had such debtor been suing the garnishee directly. *Beggs v. Fite*, 130 Tex. 46, 106 S.W.2d 1039, 1042 (Tex.1937). Under the provi-

sions of the Rubaine Agreement, which governed the rights between appellee's debtor and A. Wolfson's Inc., First State Bank would indeed need small feet to wear the shoes of its debtor, for the rights to all funds were assigned to Wolfson's. *See also James Talcott, Inc. v. Valley Federal Savings & Loan Association*, 611 S.W.2d 692, 694 (Tex.Civ.App.—Corpus Christi 1980, no writ).

Given the outcome of this appeal from a garnishment proceeding, we decline to address the latter points of error concerning constitutional questions of interstate commerce. Concerning appellant's ninth point of error, the trial court allowed appellant to intervene and defend the suit.

Although the judgment of the trial court sustaining the writ of garnishment must be reversed, First State Bank remains free to pursue its claim to the funds. In this regard we note that procedure suggested by the court in *Black Coral Investments v. Bank of the Southwest*, 650 S.W.2d 135, 137 (Tex.App.—Houston [14 Dist.] 1983, writ ref'd n.r.e.), a post-judgment garnishment case, and rather then reverse and render, we reverse and remand with instructions to the trial court to issue its order dissolving the writ of garnishment thereby providing all parties additional notice of our ruling so that all parties may assess and protect their respective rights.